BENJAMIN F. ANDREWS, petitioner,

*vs.*

MARQUIS F. KING, Mayor, and others.

Cumberland. Opinion March 24, 1885.

*Certiorari. Removal of city marshal of Portland by mayor and aldermen. Practice. Special stats. 1877, c. 346; 1878, c. 16.*

Where an officer is "subject after hearing to removal by the mayor, by and with the advice and consent of the aldermen," the hearing must be by the "board of mayor and aldermen." A hearing by the aldermen alone is not sufficient, even if by the officer's consent.

Where an officer is removable in the manner above stated for "inefficiency or other cause," the mayor and aldermen must find sufficient cause to exist as matter of fact, and so adjudicate, before a valid order of removal can be made. An omission to pass upon the truth of the charges, invalidates the order of removal.

Where upon a hearing of a petition for a writ of certiorari the presiding judge, with the consent of the parties, rules *pro forma* only, that the petition be dismissed, without exercising his own judgment, the law court may entertain exceptions, and upon them, determine whether the writ should issue.

ON EXCEPTIONS.

Petition for certiorari to quash the proceedings of the mayor and aldermen of Portland in removing the petitioner from the office of city marshal on the first day of May, 1884. The petition was dated June 17, 1884.

(Return of the respondents.)

"In addition to the records, which the said petitioner has made part of his petition in the present case, and a copy of which is also hereunto annexed, of the proceedings before the

mayor and the aldermen of the city of Portland at the hearing relating to the removal of the petitioner from the office of city marshal of said city on charges duly preferred against him — the same hearing referred to in said petition of Benjamin F. Andrews to this honorable court for the writ of certiorari — the said respondents hereby respectfully certify and return that the following proceedings were had by and before them and the following facts were found by them :—

"First. That no further specification of either of the charges preferred was requested by said Andrews or his counsel, at said hearing before the mayor and the aldermen, but on the contrary at the opening of the hearing, the counsel for the present petitioner waived all objection to the charges, as being general or indefinite in their character, except as that consideration was urged as ground for delay of the proceedings to give time and opportunity to meet them.

"Second. That the question how one of the witnesses voted at the last municipal election, which appears in the record, was excluded as in the judgment of the mayor and the aldermen of no importance and wholly immaterial upon any issue legally arising under the charges preferred.

"Third. That in reference to the form or method of proceeding — the mayor retiring from the chair after reading the charges, calling the chairman of the aldermen to preside, and first hearing the testimony before making the removal and asking the advice and consent of the aldermen — the counsel for the present petitioner expressly stated at the hearing that he made no complaint about it, and was not sure that it was not upon the whole the most becoming method. The mayor remained in attendance during the whole hearing.

"Fourth. That it was the judgment of the mayor upon the evidence introduced at said hearing that the several charges preferred against said Benjamin F. Andrews as set forth in said record were all of them proved, and it was upon that judgment he acted in removing the said Andrews from said office of city marshal.

" And the same judgment was formed upon the evidence by the aldermen who voted to advise and consent to said removal, and it was upon that judgment they acted in giving such advice and consent.

" Fifth. That there was a full hearing before the mayor and the aldermen upon all the charges preferred, as they are set forth in said record.

" And now these respondents respectfully submit that this honorable court will not canvass the evidence laid before the mayor and the aldermen of said city, with the view of drawing inferences and determining facts therefrom, but will regard the facts found by them from the evidence as established, and this their return and certificate of the proceedings before them, together with the records annexed to said petition, as final and conclusive of the same. They further respectfully submit that their doings, findings and judgments were in all respects just and without error, and within their jurisdiction under the special laws of 1878 cited in said petition, and that the petitioner shows no cause entitling him to the writ of certiorari as prayed for."

Subscribed and sworn to.

The presiding justice ruled *pro forma*, that the petition be dismissed and the writ be denied, and the petitioner alleged exceptions.

*William L. Putnam* and *C. W. Goddard*, for the plaintiff, cited : R. S., c. 77, § 5 ; *Bath B. & T. Co.* v. *Magoun*, 8 Maine, 293 ; *N. Berwick* v. *York*, 25 Maine, 73 ; *Waterville, Petr's*, 31 Maine, 506 ; *Cornville* v. *Co. Com.* 33 Maine, 238 ; *Dyer* v. *Lowell*, 33 Maine, 261 ; *Detroit* v. *Co. Com.* 35 Maine, 379 ; *West Bath* v. *County Commissioners* 36 Maine, 77 ; *Furbush* v. *Cunningham*, 56 Maine, 186 ; *Hopkins* v. *Fogler*, 60 Maine, 268 ; *Bethel* v. *County Commissioners,* 60 Maine, 538 ; *Dresden* v. *Co. Com'rs*, 62 Maine, 367 ; *Fairfield* v. *Co. Com'rs*, 66 Maine, 387 ; *Spofford* v. *R. R. Co.* 66 Maine, 48 ; *White* v. *Co. Com.* 70 Maine, 326 ; *Cushing* v. *Gay*, 23 Maine, 9 ; 2 Dill. Mun. Corp. § § 925, 929, 927 ; R. S., c. 102, § 13 ; *Dow* v. *True*, 19 Maine, 48 ; *Banks, App't*, 29

Maine, 291; *Lewiston* v. *Co. Com.* 30 Maine, 24; *Smith* v. *Co.. Com.* 42 Maine, 400; *Wayne and Fayette* v. *Co. Com.*37 Maine,. 560; *McPheters* v. *Morrill*, 66 Maine, 126; *Vassalboro, Petr's,.* 19 Maine, 338; *Minot* v. *Co. Com.* 28 Maine, 121; *Windham,. Pet'rs*, 32 Maine, 454; *Pingree* v. *Co. Com.* 30 Maine, 354;: *Harkness* v. *Co. Com.* 26 Maine, 356; *Strong* v. *Co. Com.* 31. Maine, 580; *Winslow* v. *Co. Com.* 37 Maine, 562; *Bangor* v.. *Co. Com.* 30 Maine, 273; *Levant* v. *Co. Com.* 67 Maine, 433;. *Orono* v. *Co Com.* 30 Maine, 305; *Pike* v. *Harriman*, 39· Maine, 53; *Hayward, Pet'r*, 10 Pick. 358; *State* v. *Rochester,.* 6 Wend. 564; *Ledden* v. *Hanson*, 39 Maine, 359; *Emery* v.. *Brann*, 67 Maine, 44; *Ross* v. *Ellsworth*, 49 Maine, 418;: *Oxford* v. *County Commissioners*, 43 Maine, 257; Special Statutes, 1878, c. 16; *People* v. *Nichols*, 79 New York, 588;. *People* v. *Fire Commissioners*, 72 New York, 449; *Osgood'* v. *Nelson*, 5 Appeal Cases, Law Reports, 636; *Farmington R. W. P. Co.* v. *County Commissioners*, 112 Mass. 206;. *Tewksbury* v. *Co. Com.* 117 Mass. 564; *Murdock, App't*, 7 Pick. 312.

*Charles F. Libby*, for the defendants.

There is no provision of law authorizing exceptions to the· decision of a judge at *nisi prius* on a petition for certiorari.. This court has jurisdiction only of questions arising on the writ. of certiorari. The granting of the petition is matter of discretion,. not of right. No exceptions lie to the refusal of a judge to grant. the writ, and therefore none to his rulings at the hearing upon the· petition. The language of the statute (R. S., c. 77, § 42)ı seems explicit in this point. It is confined to "questions arising: on writs of . . . certiorari, when the facts are agreed on,. or are ascertained and reported by a justice." If no writ is: granted there is no provision of law for bringing the matter before the law court. Here the facts are not "agreed on" nor "reported by a justice;" it is a petition and not a writ.

The final vote, as recorded by the city clerk, does not specifically mention the charges, but when taken in connection with the rest of the record leaves no reasonable doubt as to the basis

of the aldermen's action. We submit that this is not a case where the action of the court is to be governed by a strained construction of the record of a municipal body, not acting according to the course of the common law, and not accustomed or to be expected to make up its record with the fullness and accuracy with which the record of a judgment of a court of law would be made up. On the contrary, this is a case when the petitioner is bound to show that he is, in fact, actually aggrieved, not that the record is capable of a construction, which renders it possible to argue that he was so aggrieved.

If such a course was to be accepted, no records of municipal officers could stand, as they furnish at the best a mere outline of the proceedings. As said by Judge DEVENS in *Fairbanks* v. *Aldermen of Fitchburg*, 132 Mass. 47 : " In cases of this character it is particularly desirable to deal with the substantial justice of the case, untrammelled by defects in the records or in the pleadings."

The only question which any court would consider, when asked to set aside these proceedings, would be, what was in fact the judgment of that tribunal upon these charges — were they sustained or not — not merely does the record show it fully, but what was the fact.

Upon this question the answer of these respondents is conclusive. They say, whatever the record may or may not show, our judgment was upon the evidence that these charges were sustained, and that the petitioner was guilty of taking bribes as well as of the other acts specified, and upon that judgment they acted in voting to remove him. What claim, then, has the petitioner for the favorable action of this court?

" The court cannot, upon a writ of certiorari, examine into the merits of a case and set aside the verdict as being against evidence." *Johnson* v. *Ames*, 11 Pick. 173; *Fay and al. Petitioners*, 15 Pick. 243.

The reasons which have led the courts to hold that the record as first made up is not conclusive, but may be supplemented by a further return, are apparent. If this were not the case, inexperienced recording officers might place in jeopardy important

public interests and delay indefinitely important action on matters of great moment. The proceedings of municipal boards would be hedged in by technicalities, which would destroy the efficiency and defeat the objects for which they are established. The strictness of ordinary legal proceedings cannot be expected in the record of their action. Some allowance must be made for their inexperience and lack of legal knowledge, when it does not touch the merits of their action. For this reason the courts have held that when the record does not show all the steps in the proceedings or the grounds of their action, they may make a return, setting out such additional matter as shows that the action taken by them was legal; as stated by GRAY, C. J., in *Farmington River Water Company* v. *County Commissioners*, 112 Mass. 206 : "To a petition for certiorari to quash the proceedings of county commissioners, the commissioners may file an answer stating in detail their findings at the hearing before them, if not stated in their record; and the petitioners cannot control it in matter of fact by intrinsic evidence." See also pp. 216, 217. "A return in writing by the county commissioners of their findings, which cannot be disputed in matter of fact." *Tewksbury* v. *County Commissioners*, 117 Mass. 563 ; *Mendon* v. *Co. Comrs*, 5 Allen, 13 ; *Worcester & Nashua R. R.* v. *Railroad Comrs.* 118 Mass. 564 ; *Chase* v. *Aldermen of Springfield*, 119 Mass. 556 ; *Grace* v. *Board of Health*, 135 Mass. 497, 498. Also citing *Gloucerster Co. Com'rs*, 116 Mass. 581 ; *Fairbanks* v. *Mayor and Alderman of Fitchburg*, 132 Mass. 42.

But the practice in this respect has been so fully and closely stated in a late opinion of this court, that further citation of authorities is unnecessary.

"The answer of the county commissioners to a petition for certiorari should contain a full, detailed statement of the facts proved and the rulings thereon, so far as the points complained of in the petition are concerned. The answer, when completed, signed and sworn to, is conclusive on all matters of fact within their jurisdiction." *Levant* v. *County Commissioners*, 67 Maine, 429.

Petitioner's counsel complain that the return of respondents uses the word " judgment " in place of finding, and say that it is an evasion of liability and an attempt to deprive them of the remedy they would have in case the word " finding " had been used. We submit that the objection is hypercritical and unreasonable. The word " judgment " involves a finding. See " Finding " in Burrill's Law Dict. The language of the return is " it was the judgment of the mayor upon the evidence," . . " and the same judgment was formed upon the evidence by the aldermen who voted to advise and consent to said removal," " and it was upon that judgment they acted," etc.

There can be no question as to what these words mean. They include a finding of fact, a conclusion reached by means of evidence. To complain of the form of the statement is to cavil about words, and ignore their real significance. What element that goes to make up a valid judgment and legal action of the board is wanting, when the mayor and aldermen certify that upon the evidence their judgment was that the petitioner was guilty of the charges preferred, and that upon that judgment, so formed, they acted in removing and in advising and consenting to the removal.

EMERY, J. The office of city marshal is not a corporate, nor ·even a municipal office. While the appointment of the incumbent is usually delegated to the municipal government, it is competent for the legislature to intrust it to the governor. Cases are not uncommon in large American cities where the state has taken to itself the appointment and government of the police force of the ·city. The city marshal has other than municipal duties. He has to preserve the public peace, the peace of the state. He has to enforce the laws of the state. He is essentially a state officer, and the people of the whole state are interested to have such legislation, and judicial interpretation, as to his appointment, tenure, and removal, as will secure the most efficient adminis-tration of his office. Dillon on Mun. Corp. ( 3 ed.) § § 58, 60, 210; *Farrel* v. *Bridgeport,* 45 Conn. 191; *Cobb* v. *Portland,* 55 Maine, 381. The court, therefore, in passing upon the

questions here presented, must regard the rights and interests of the people, as well as those of the parties. It is a question of public, as well as of private right.

Formerly, the city marshal of Portland was appointed by the mayor and aldermen, annually, subject to removal for good cause. This practically gave the mayor and aldermen power to remove at will, at the end of the year, by merely not re-appointing. By the act of 1877, c. 346, and the amendatory act of 1878, c. 16, the legislature provided that the marshal should "hold office during good behavior, subject, however, after hearing, to removal at any time by the mayor, by and with the advice and consent of the aldermen, for inefficiency or other cause." The tenure of the office was made to be during good behavior, a tenure as long as that of the justices of the Supreme Court of the United States. We must assume that this important change in tenure was made advisedly. We must assume that the legislature investigated and deliberated sufficiently. We must assume that its action herein was expedient and necessary, and so unhesitatingly give it full scope and effect.

A power of removal is always necessary to ensure good behavior; and in this case, a power of removal was vested in the mayor and aldermen, to be exercised, however, only when there was "inefficiency or other cause" existing, and then only after hearing. The discretionary power of annual removals by not re-appointing, was taken away. Removals were now to be made only when necessary, for causes affecting the administration of the office, and only after examination and deliberation. In these proceedings for removal, the public, for whose benefit the legislation was enacted, and the incumbent himself, have a direct interest.

While the incumbent of a legislative office has no vested right to his office, as against the state; while he has no such property in it as can be conveyed, yet his right or title to the office and its emoluments has always been recognized by the courts as a valuable interest; as a privilege entitled to the protection of the law. He ought not to be deprived of it, "but by the judgment of his peers, or by the law of the land."

In view of the importance to the public, as well as to the parties, of the principles which must govern the decision of this case, we deem it advisable to consider at some length, the various requirements of the statute, for a valid removal. The removal can only be for cause, but the statute does not specify in detail what the causes are, which will justify a removal. "Inefficiency or other cause," however, must mean substantial cause. In determining the meaning of these words, they should be considered in connection with the preceding words, declaring the tenure of the office to be "during good behavior." We think they embrace any act of nonfeasance or malfeasance in office, from corruptness, as well as nonfeasance or misfeasance from inefficiency. They may also be fairly held to embrace the commission of an infamous crime while in office, or a conviction of a misdemeanor and sentence to imprisonment for a term which will prevent the officer from discharging the duties of his office.

The composition and character of the tribunal constituted by the statute for hearing and determining the causes, should also be considered. The legislature, it must be assumed, intended it to be disinterested and impartial. In this case, as is usual, the mayor and aldermen are constituted the tribunal. In proceeding under the statute, they do not act as municipal officers, nor as agents of the city, but, *pro tempore*, as judges. It has been held, that when sitting as judges to try charges against an officer, municipal officers must be specially sworn for that purpose. *Tompert* v. *Lithgow*, 1 Bush. (Ky.) 176. We doubt if such a special oath is necessary, but the case cited illustrates and supports our proposition, that the mayor and aldermen act under this statute, apart from their mere municipal duties, and in a judicial capacity. The act of hearing and deciding is always a judicial act. It should always be done, deliberately and without bias.

The statute provides that the mayor shall take the initiative in passing an order of removal, and that the aldermen shall have power to negative the order. The mayor, however, can not exercise his initiative until after the hearing. The language is, "subject after hearing, to removal by the mayor," &c. The

statute does not expressly declare before whom the hearing shall be, whether before the mayor alone, or the aldermen alone, or the mayor first and the aldermen afterward, or before the mayor and aldermen together. Only one hearing seems to be contemplated however, and yet, the concurrence of both the mayor and the aldermen is required for vote of removal.

The inference would be that the hearing should be by both, and by both together. In the statutes, and in the city charter of Portland, as in all city charters, certain powers and duties are vested in the mayor; certain others are vested in the aldermen, while the general administrative powers of the city, including the administration of the police, are vested in " the mayor and aldermen. " The mayor and aldermen constitute a board distinct from the board of aldermen. The mayor is required to preside at all meetings of the mayor and aldermen, (city charter, § 3,) but the aldermen select their own chairman when in session by themselves. When anything in municipal matters is to be done by the mayor and aldermen, it is done in a session of that board. The mayor and the aldermen in such cases, sit together in the considering of municipal affairs, and while their final action may be concurrent, their hearings and deliberations are in common. In the absence of any declaration to the contrary, we think that when the legislature provided for a hearing before removal, it intended that both the mayor and the aldermen should hear the matter, and should hear it as they hear other matters, sitting as a board of mayor and aldermen, with the mayor in the chair. This view is supported by the subsequent legislative provision, that " the mayor and aldermen " ( of Portland ) should have power to send for persons and papers, and compel the attendance of witnesses, " at any meeting of *said board of mayor and aldermen*," at which a hearing is to be had. ( Special laws of 1881, c. 86. )

The tribunal is composed of two factors, whose concurrence is necessary to a valid sentence. The public, and the respondent, are entitled to the unbiased judgment of each, after hearing, and as the result of the hearing. It is a part of the " law of the land, " that the authority which strikes must hear.

The proceedings before this tribunal should be according to

" the law of the land, " which is the common law wherever the statute is silent. Specifications of the alleged causes should therefore be formulated with such reasonable detail and precision as shall inform the people and the incumbent of what dereliction is urged against him. The charges should be specifically stated with substantial certainty, though the technical nicety required in indictments is not necessary. Dillon on Mun. Corp. (3 ed.) 255. They may be presented by any one. It is not improper for the mayor, as the chief executive magistrate of the city, required to be vigilant and active in causing the laws of the state to be enforced, to formulate the charges, even *suo motu.* In his supervision over the conduct of officers, it may be his duty to do so. But he should not prejudge the case ; he should not act as prosecutor at the hearing ; there, he should divest himself of his executive functions and assume the judicial ; he should suspend his own judgment till the hearing is completed, that it may be the result of the hearing, and not of a preconceived opinion.

The incumbent should have reasonable notice of the charges, as formulated, and of the time and place of the hearing. At the hearing, he should be allowed to cross-examine the witnesses against him, within the rules of evidence. His own testimony and that of the witnesses for the defence, should be fully heard within the same rules. The hearing should be full and fair, and by a patient, unprejudiced tribunal. The proceeding is adversary or judicial in its character, and where the statute is silent, the substantial principles of the common law must be observed. Dillon on Mun. Corp. (3 ed.) 253 ; *Murdock* v. *Phillips' Academy,* 7 Pick. 303 ; 12 Pick. 244.

After hearing and before sentence, (for the order of removal is a quasi sentence, though we use the word for purpose of illustration merely,) there should be an adjudication upon the truth or falsity of the charges as matters of fact ; for upon such adjudication the sentence is based. This adjudication must be by the tribunal that hears the evidence, here, the board of mayor and aldermen. The removal can not be made, unless the alleged cause in fact exists, and such existence should be ascertained and declared, as the legal basis for the sentence of removal. Such is

the immemorial practice in prosecutions in the common law courts. We do not refer to civil proceedings. No sentence is there pronounced until the respondent has been found and declared guilty of the particular charge alleged. The records of the higher courts recite first the fact that the respondent is found guilty, by verdict, or plea, and "*therefore* it is considered," &c., or "*whereupon* it is ordered," &c. At the preliminary hearing before a magistrate, where there is a plea of "not guilty," the record always shows, that upon hearing, the respondent is adjudged guilty or not guilty, as the case may be, and that the sentence or order is based on such finding of fact.

In special courts, established for the trial of officers alleged to be unfaithful, such as courts of impeachments and courts martial, we believe it is the universal practice for the court to pass first upon the truth or falsity of each charge, before passing sentence.

This must needs be the course, otherwise the court might pronounce sentence, where no one charge was believed by a majority of the court. There might be as many charges as there were members of the court, and no one charge receive the assent of more than one member, yet that member vote to sentence, on account of his belief in the truth of that one charge, which all his associates believed to be false.

If each member did so, there would be sentence, without conviction, and without guilt. Such a result would be monstrous, and hence the practice of first ascertaining and declaring whether the court agrees, or concurs, upon any one charge as proved.

We think it may be assumed in the absence of specific directions, that the legislature intended this special tribunal should follow the course so long, and generally followed by the common law courts, and special courts charged with similar duties. The same reasons for such a course certainly exist.

In this case now before us, are seven different charges. The mayor might be convinced of the truth of one only, and think it his duty to remove for that cause. The aldermen might be unanimous in the belief that the particular charge relied upon by the mayor was not proved, and yet be of the opinion some other charge was true. The mayor might remove upon his belief, and

the aldermen consent upon their belief, and the officer be thus removed without any concurrence of belief. Again, no one charge might be proved to the satisfaction of more than one alderman, while each one of the seven aldermen might be satisfied with the proof of one of the charges, and consent to the removal for that charge. There might be, in this way a unanimous vote for removal, where six-sevenths of the board believed every charge to be false. Again, the mayor and aldermen might believe in the truth of such charges only, as are not legal cause for removal, and disbelieve the others, and yet vote to remove, and the incumbent thus be deprived of his office against the evident will of the people. The evil and unjust results, that might follow from an omission of the tribunal, to first ascertain and declare the facts as to the charges, before considering the sentence are cogent arguments that such ascertainment and declaration must be an essential part of the procedure, for a valid removal. No course of procedure of an inferior tribunal, that could so nullify the intent of the statute, and so elude the supervisory power of the Supreme Court over such tribunals, can be according to " the law of the land."

If any charge be found true by the concurrent finding of the mayor, and aldermen, substantially in the manner above indicated, and the officer's removal be thought advisable, there must then be an order of removal. The adjudication upon the facts, and that upon the advisability of removal are distinct acts. The latter cannot precede nor be co-incident with the former, but must follow it. Though the board of mayor and aldermen may find some of the charges proved, *non constat* that the mayor will remove, or the aldermen consent. Repentance, reparation, or other considerations may induce a suspension of sentence. If removal be determined upon, by the mayor, he should make an order to that effect, and if the aldermen consent, that consent should be formally expressed. We do not mean that these things are to be done with stateliness of manner, nor that the record is to be minutely formal. The manner may be familiar, and the record brief. The finding of the facts, and the consequent order may be expressed simply, and in condensed form.

All that is necessary is, a substantial observance of the essentials, and some expression thereof, in some intelligible form.

In the absence of any statute provision, the procedure above out lined appears to us upon principle and analogy to be that required by "the law of the land," according to which the officer must be deprived of his office, if at all.

Now, let us, in the light of the principles above stated, examine the proceedings of the mayor, of the aldermen, and of the board of mayor and aldermen, and see wherein they are erroneous, if there be any error. They are generally regular. Two at least of the charges, the fourth and fifth, were sufficient in form and substance. There are two matters, however, that seem to us irregular, and if not sufficiently cured, erroneous, in substance.

1. There was no hearing before the mayor, nor before the board of mayor and aldermen. The mayor evidently did not consider himself a part, or member of the tribunal that was to hear and afterward determine. From his letter to the marshal of April 21, 1884, it would seem he did not understand that he was to give a hearing, but rather that the marshal could be heard before the board of aldermen on the question presumably of their concurrence in the predetermination of the mayor to remove. At the hearing he did not preside, as he was by law bound to do, at all meetings of the mayor and aldermen, and although he remained in attendance, it was only as a spectator or prosecutor. The official hearing was by the aldermen alone. For the reasons heretofore stated, we do not think that such a hearing was sufficient basis for sentence of removal. The respondent and the people were entitled to the judgment of the mayor, and that, after hearing, and as the results of the hearing. They were entitled to be heard by him as a judge before he should pass sentence. There has been no hearing by the statute tribunal, if we have correctly assumed that the statute intended a hearing by the mayor as well as by the aldermen.

2. At the conclusion of the hearing, the mayor took his seat, as mayor and presiding officer, (the board of mayor and aldermen being thereby in session) and without stating what charges

he found proved, or upon which of them he based his action, without putting to the board the question of guilt or innocence, without any finding of facts by either factor of the board, upon either charge, he passed sentence of removal. He then put the question whether the aldermen would advise and consent thereto.

The aldermen did not pass upon the truth or falsity of any charge. There was no ascertainment nor declaration of any facts. Their only vote or act was that of .sentence. We cannot know from the record that a majority of the aldermen believed in any one charge, nor whether the removal was upon a sufficient, or insufficient charge. The record does not disclose what was the basis for the sentence, nor that there was any basis. According to the principles of law heretofore stated, this want of a proper basis renders the sentence of removal invalid.

The first named irregularity was an abuse of jurisdiction. The court constituted by the statute .did not sit. The mayor, an essential factor of that court, abdicated his judicial functions. The board of aldermen assumed to themselves the power that was only to be exercised by the board of mayor and aldermen.

The second named irregularity was an error in procedure. They are both within the superintending power of this court, which " has general superintendence of all inferior courts, for the prevention and correction of errors and abuses, where the law does not expressly provide a remedy." R. S., c. 77, § 3. This jurisdiction is broad enough to include a superintendence of the mayor and aldermen where they are sitting in any judicial capacity. Such power has been repeatedly exercised in England and in this country, and in cases of removal of officers of private corporations as well as of public officers. It does not extend to a re-trial of the facts, nor to a review of the evidence, nor to a revision of any matter of discretion. It does extend to an examination of the grounds of the proceedings, and of the course of the procedure, to determine whether the inferior court kept within its jurisdiction, and proceeded according to law. Whether the inferior court is legally constituted; whether the allegations made to it are sufficient in form and substance to authorize it to proceed; whether its procedure is correct, and whether its

sentence is lawful are questions for this court to determine. If abuse or error be found in any of these matters, this court can by proper process annul the whole proceeding, where no other mode of correction is provided. The foregoing proposition as to the extent of the supervisory power of this court, and that it comprehends cases of attempted removal of officers for cause, is well established by authority. *People* v. *Fire Commissioners,* 72 N. Y. 245; *People* v. *Nichols,* 79 N. Y. 582; *People* v. *Campbell,* 82 N. Y. 247; *State* v. *Lufton,* 64 Mo. 415; *Rex* v. *Richardson,* 1 Bun. 517; Dillon on Mun. Corp. (3 ed.) 250, 251 and notes. In an English case *Osgood* v. *Nelson,* L. R. Q. B. 41, 329 and 5 App. Cas. L. R. 636, the statute authorized the mayor, aldermen, and council to remove the registrar for " inability, misbehavior, or for any other cause which *may appear reasonable to them.*" The court of Queen's Bench and the House of Lords on appeal, considered, and determined for themselves the reasonableness of the alleged causes. They decided that habitual non-attendance was a reasonable cause, but they did so upon their own judgment, and not upon that of the mayor, aldermen and council.

The respondent before the mayor and aldermen, comes to this court as a petitioner for the writ of certiorari, which the court has the power to issue in the furtherance of justice. R. S., c. 77, § 5. This writ is the usual and suitable remedy as its effect is to annul the proceedings of the inferior court, if found to be erroneous. In accordance with the approved practice in this state, the mayor and aldermen, the respondents to the petition, not only sent up their records, but also an answer on oath alleging other proceedings and matters that do not appear in the record.

They claim that their answer is conclusive as to all matters of fact alleged therein, and that these show, that the seeming irregularities did not really occur or were waived, or that the petitioner was not prejudiced thereby. *Levant* v. *Com'rs,* 67 Maine, 429. The answer, however, is not conclusive of the legal effect of the facts alleged, and the sufficiency of the allegations for their purpose is next to be considered. We need only to consider allegations relating to the two errors already indicated; that of

the mayor's omitting to sit officially at the hearing; and that of the mayor and aldermen omitting to adjudicate upon any of the charges.

As to the first, the respondents' answer, (see item 3, of the answer) that the mayor was in attendance and heard the testimony. We do not understand them to mean that the mayor attended, and heard officially as a judge. The record shows that the hearing was before the board of aldermen only, and that the mayor was present as a spectator or prosecutor. An answer is not to be construed as contradicting the record, but rather as supplementing it. The respondents also answer that the counsel for the present petitioner, expressly stated he made no complaint about the mayor leaving the chair, and was not sure it was not, upon the whole, the most becoming method. The argument of course is, there was a waiver of the mayor's performance of his judicial duty in the matter, and that it was competent for the petitioner to waive it, and so give jurisdiction to the board of aldermen alone.

If it were matter of form, or of practice, or even of procedure only, it was, perhaps, competent for the then respondent to waive it, and be bound by the waiver. But this matter involves the composition of the tribunal; indeed its very authority and existence, in which the people have a manifest interest. As before stated, the statute contemplated a hearing by the mayor and aldermen sitting as a board, the mayor in his place as mayor and presiding officer. The incumbent of the mayoralty was not simply an individual member of the tribunal who might be absent and yet leave a quorum. He was an essential factor. There could be no board of mayor and aldermen without an acting mayor. There could be no legal hearing under this statute, without the mayor or his vice being present, sitting in his place as mayor, as one branch of the tribunal composed of two branches. There could be no sentence without a prior legal hearing. The city marshal might have resigned his office, or have confessed the charges, but he could not confer on the board of aldermen alone, the jurisdiction to hear, nor upon the mayor the jurisdiction to sentence without hearing, or confession. Neither branch could

exercise by consent a jurisdiction it did not have by statute. It is a familiar principle that consent will not confer jurisdiction on an inferior court.

A superior common law court when trying questions of fact is composed of two factors, a judge and a jury. Both must be present and hear. In civil causes the statute permits the parties to waive the jury, and submit the case to the judge. In criminal causes however, which are more analogous to this proceeding, there is no provision for the waiver of a jury. If a respondent while adhering to his plea of not guilty, should verbally offer to submit to a hearing by the judge alone, such offer or waiver would not authorize the judge to dispense with the jury, and proceed to hear and sentence. This would be very apparent in the case of the graver offences where the penalty might be long imprisonment, or even death. The principle however, would be the same in the case of all offences. If then a superior court, will not eliminate or suppress one of its factors upon the verbal consent of a respondent pleading not guilty, it would seem that an inferior and limited tribunal cannot do it. It must not be forgotten that the people as well as the respondent, are interested, in the proceedings.

As to the second error, the respondents' answer, (see item 4) that it was the judgment of the mayor, and of those aldermen voting for removal, upon the evidence at the hearing, that all the charges were proved, and that the sentence and consent thereto, were based on that judgment. Reading this answer in the light of the record, the meaning seems to be, that the evidence induced in the mind of the mayor, and in the mind of each aldermen voting with him, a belief in the truth of all the charges. The most that the answer and record taken together indicate, was a mental status in certain individuals. By their use of the term "judgment" in their answer we do not understand the respondents to assert, that their individual mental beliefs, were formulated into an expressed judgment of the tribunal, in the technical law sense of the term. Individual members of this

court, may in relation to a case, have certain views, or opinions induced by the arguments. Each member may have the same opinion in his own mind. But such individual opinions do not constitute a judgment of the court, upon which further proceedings could be had. These opinions must be formulated, and expressed officially to become a court judgment. It is only after such formulating and expression that the consequences of a judgment can follow. We have said there should be an adjudication upon the facts. That adjudication is something more than a mental process, or conclusion in individual minds. It is an expression, a giving out by the tribunal, of the resultant of the opinions of its members, such expression being an open act, a step in the procedure. It should properly appear on the record; but if the recording officer omitted it, and such expression was actually made, the record may be amended, or the fact can be shown in answer to a petition for certiorari, (67 Maine, 429). We do not however, understand the answer in this case, to assert there was any such expression, any such formal articulation of judgment. Indeed the record expressly declares that the board of aldermen was requested to make it by one of its members, and refused. The answer is not sufficient to cure the second error.

The respondents however, further argue, that the granting of the writ of certiorari, does not necessarily follow from their omission to show regular proceedings. The granting of the writ is a matter of judicial discretion, and they urge that, even if these particular proceedings are erroneous, new ones can at once be instituted, from which the same result must follow, and therefore these may well be permitted to stand. The great majority of cases in which the writ is asked for, are purely civil proceedings, such as those about taxes, roads, etc., and in such cases, the writ is always granted, if there be an excess of jurisdiction by the inferior court, or any unauthorized step, or omission in the procedure, which may work an injustice. This proceeding before the mayor and aldermen, however, is somewhat akin to a criminal prosecution. It charges the petitioner with offenses. It may result in his condemnation and disgrace, as well as in the

loss of some privilege. It has been said that in such cases, the injured party is entitled to the writ *ex debito justitiae.* Dillon on Mun. Corp. (3 ed.) 925.

It is also suggested in the argument that the proceedings of a special court, unlearned in the law, are not required to be so regular, nor its records so full and accurate as those of a superior court. The court is reminded of the indulgence shown to the records and proceedings of municipal bodies. The courts will labor to discover and give effect to the real intention of these bodies, in all municipal matters, as expressed in any votes or proceedings, however informal. But even in such matters, the court can not supply votes that were not passed, nor overlook the illegality of the votes that were passed. In such adversary proceedings as these, moreover, distinct from, and more solemn, than, those in municipal matters; in proceedings so summary, affecting the character of a citizen and the peace of the state, the proceedings and record should be reasonably regular and precise. No intendments can be indulged as to the jurisdiction and regularity of the procedure of the mayor and aldermen in such cases. *State* v. *Lupton,* 64 Mo. 415.

This case is brought before us, upon exceptions to various rulings of the presiding judge at the hearing on the petition, and it is contended that the law court has no jurisdiction over questions arising on the petition, but only over those arising on the writ itself. In the enumeration of the cases that may come before the law court, in § 42, c. 77, R. S., the last case named is, "questions arising on *writs* of . . . certiorari." Early in the same list, however, is named, "bills of exceptions." Again in § 51, of c. 77, it is provided that "a party, aggrieved by any opinion, direction, or judgment of the presiding judge," may have a bill of exceptions to the law court. There would seem to be sufficient authority for this court to determine this bill of exceptions. The exceptions present questions of law solely. If it be suggested that the final ruling dismissing the petition was a matter of judicial discretion, not reviewable by this court, it may be answered that the presiding judge did not exercise any such discretion. He heard no evidence. He looked at the petition,

record and answer only. They presented a grave and delicate question. He made a *pro forma* ruling only, with the apparent consent of the parties, and with the evident intention of thereby bringing the whole case before us for more full consideration. The case might properly have come up upon report, or agreed statement, but the form in which it comes is not essential. BARROWS, J., in *Collins* v. *Chase*, 71 Maine, 435.

We have only considered the principal question, that presented by the final ruling dismissing the petition, as the result we have arrived at, renders any consideration of the minor rulings unnecessary. We have discussed, and passed upon two errors in the proceedings of the inferior court, when perhaps one was sufficiently decisive of this particular case. We have thought it advisable, however, to state at some length, the legal principles we deem applicable to the case. It is highly important that all inferior tribunals, especially those vested with a jurisdiction to deprive a person of his property, and condemn him to disgrace, should keep within their jurisdiction, perform their whole duty, and proceed according to law. Our somewhat lengthy discussion may serve as a guide to such tribunals, who, we are glad to assume, desire to act impartially and lawfully, and who only err, as in this case, from a misapprehension of their duty.

We think the errors noted are substantial, — that they are not cured by the answer, and that they are of such a nature as requires the writ to issue.

*Exceptions sustained. Writ to issue.*

PETERS, C. J., WALTON, VIRGIN, LIBBEY and HASKELL, JJ., concurred.