GUILLERMO ORTIZ GUZMÁN, Plaintiff and Appellee, *v.* LEOPOLDO VENEGAS, MAYOR OF COAMO, Defendant and Appellant.

No. 5234.   Argued April 13, 1932.—Decided April 26, 1932.

*E. Ramos Antonini* for appellant. *Leopoldo Tormes, Manuel A. Rivera, Agustín E. Font,* and *F. Zapater* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

This case deals with the removal of a municipal officer. The first question that arises is as to the propriety of the procedure followed in the district court.

In *Gutiérrez* v. *Monclova, Mayor,* 39 P.R.R. 823, it was held:

"As the appeal from the removal of an officer provided by section 29 of the Municipal Law as amended by Act No. 92 of 1925, requires a trial *de novo* in the district court, any error committed in the proceedings before the mayor is harmless."

The trial judge maintains that the above decision is not applicable to this case, and indeed he is correct. The act therein construed, in referring to the remedy of appeal granted to the removed officer, provided:

" 'The appeal shall be made in writing, addressed to the court, which shall notify the mayor, and the trial shall be held within a term of two months after the presentation of the appeal in writing, the court hearing in regular form, the evidence necessary to decide the controversy; . . . . ' "

That act was superseded by another, No. 53, entitled "An act establishing a system of local government for the municipalities of Puerto Rico," approved on April 28, 1928, which by its section 29, in so far as pertinent, prescribes:

" *     *     *     *     *     *     *

"The administrative officers shall be removed from office only by the mayor, from whose decision the officer removed may take an appeal, which shall be the only one allowed, before the corresponding district court, which shall consider and decide the questions of fact and law involved in the appeal within a term not exceeding thirty (30) days from the filing of the complaint on appeal . . ."

The provisions relating to the introduction of the evidence, which led the court to grant a new trial in the *Gutiérrez* case, *supra,* have ceased to exist.

The appellant maintains that the district court erred in that, notwithstanding the conclusion it reached that an appeal was involved differing from the one in existence prior to Act No. 53 of 1928, it failed to apply in the proceedings the general rules provided in the act for such appeals, by allowing a certain writing entitled "complaint on appeal" to remain in the record.

The question is doubtful, but the act itself uses both in English and Spanish the expression "complaint on appeal" (*demanda en apelación*), and the court, in giving it a broader meaning than the phrase "a notice stating the appeal" used in section 296 of the Code of Civil Procedure, was not without justification, as we shall see later.

Nor do we think that the court erred in finally determining what should constitute the record of appeal. The court hesitated at first and took different measures which it corrected, until at last it took as a basis the record which the mayor had before him to decide the case, presented to the court in a duly authenticated and attested form, and it held that it is incumbent on the appellant in this kind of appeals to file in the district court an authenticated transcript of the proceedings which took place before the mayor, in order that the court may be placed in the same position as the mayor and may "consider and decide all questions of fact and law involved in the appeal."

When and how should the transcript be filed? The appellant was here allowed to file it during the hearing. It would seem advisable to quote what the trial judge said on this point. He stated in his opinion:

"Before going any further, the court wants to repeat here what it declared several times in the course of the proceedings, namely: that section 29 of the Municipal Law, *supra*, does not clearly and definitely prescribe the procedure to be followed in these cases. The word 'appeal' is used, the time for deciding the case is limited to thirty days from the filing of the complaint on appeal, but really, it cannot properly be said that the time for appeal fixed by the Code of Civil Procedure is applicable. Holding this view, the court issued

on January 15, an order directing the defendant to send up within ten days all the documents and evidence which he considered in passing upon the charges. On the day of the hearing, the defendant moved the court to vacate said order, on the ground that section 29, *supra*, did not authorize the same, inasmuch as said section deals with a review by appeal and not by certiorari, and that the defendant should not be required to file the record of the case, it being incumbent on the plaintiff to do so. The court granted this motion; it, however, permitted the defendant to present said documents as the only evidence in the case, and refused to consider the latter as on a trial *de novo*.

"The court was and still is of the opinion that under the decision in *Coll v. Todd, Mayor*, 35 P.R.R. 572, and *González v. Todd, Mayor*, 40 P.R.R. 171, decided by our Supreme Court in November, 1929, even though a certiorari proceeding be not involved and the word 'appeal' be used in the statute, it is the duty of the court in such cases to review the proceedings had and the evidence adduced before the mayor in order to determine whether the removing officer acted according to law and whether there was evidence to justify the removal.

"In 43 C.J. 677 the doctrine is expressed thus:

" 'In some states, a special remedy in the nature of an appeal has been given by statute to one whom it is intended to remove from office for cause. Such an appeal brings before the court only the validity of the proceedings required by law before removal is made, and the discretion of the removing power will not be reviewed.'

"It is only logical that it should be so. Otherwise the court, and not the officer, would be passing upon the charges. Section 29 of the Municipal Law, *supra*, provides that the court shall decide the 'questions of fact and of law involved in the appeal' and we hold that these can only be the ones appearing from the evidence and the proceedings before the mayor; and that it was for this reason that the court restricted plaintiff's evidence to the transcript of the proceedings and documents presented to the mayor."

If at the time the appellant files his complaint on appeal he has available the transcript, he may file it then; otherwise, he may do so at any time before the hearing. But we do not think that its filing during the hearing, as was done here, would be improper. The brevity of the period fixed by the law allows, it seems, no other alternative; and what really

matters is that at the conclusion of the hearing the judge should be in possession of all the necessary facts to decide the case, and that the interested parties should be afforded the opportunity to take as a basis the whole matter in presenting their questions and arguments.

It is claimed that the appeal should have been dismissed because no separate assignment of errors was made. Indeed, no appeal without an assignment of errors is conceivable. But considering the construction given to the provisions of the statute regarding the "filing of the complaint on appeal," it might be said that such a complaint takes the place of the assignment of errors, inasmuch as it is not a mere notice of appeal, but serves, as in the present case, to set forth the grounds for the appeal.

The questions relating to the perfection of the appeal in the district court having been disposed of, we shall now examine the grounds on which the said court rendered its judgment reversing the decision of Mayor Venegas whereby Doctor Ortiz was removed from his office as director of charities, and ordering his immediate reinstatement, with costs.

The appellant maintains that said judgment was contrary to the facts and the law, and that, in any event, it should be reversed as regards the imposition of costs.

We shall quote again from the opinion of the trial judge, this time on the grounds of his judgment. He said:

"The evidence introduced by the plaintiff-appellant consisted in the charges filed, the answer thereto, a motion for disqualification made by the plaintiff before the mayor, the latter's decision removing the appellant, the stenographic record of the hearing held before the mayor wherein the testimony of all the witnesses and the documentary evidence presented by him appear.

"The court has carefully read the two hundred forty-three pages covered by said stenographic record, and it is of the opinion that, although according to the jurisprudence the removing officer is not bound down by some of the niceties that govern the trial court (González v. Todd, Mayor, supra) and the rules of evidence need not be strictly followed (43 C.J., p. 666, sec. 1104), in the case at bar things

were carried to the other extreme, that is to say, the hearing before the mayor, instead of being conducted as an administrative quasi-judicial proceeding, assumed all the characteristics of a criminal trial, in which the mayor had two attorneys by his side, whom he designated as 'advisers' (*asesores*), and who, to judge by their actions, were true prosecutors, they being the ones who really prompted the mayor to decide questions of a legal character and induced him to act to the prejudice of the rights of the plaintiff-appellant herein. The court reaches this conclusion because it appears from the stenographic record that, but for the direct intervention of one of the said attorneys, Mr. Ramos Antonini, the mayor would not have sustained the striking out of certain allegations contained in the appellant's answer to the charges, nor as a result would he have prevented the latter from introducing evidence in support of such allegations, thereby depriving him of a part of his defense. All this was done against the objection of the appellant herein.

"Moreover, Dr. Ortiz filed a motion for disqualification at the commencement of the hearing of the charges before the Mayor of Coamo, which reads as follows:

"To the Honorable Mayor.—Dr. Guillermo Ortiz, through his undersigned attorneys alleges:

" 'That respondent will not have his day in court and a fair and impartial trial, nor an opportunity to defend himself, nor enjoy the equal protection of the laws, if this investigation is made, directed and determined by Mr. Leopoldo Venegas in his capacity as mayor for the following reasons:

" '1.—Because the ten charges filed have not been brought by reason of any complaint or accusation of any person whatsoever, but only due to the direct intervention of Mr. Venegas himself, and he cannot act in the dual capacity of informer or complainant and of judge of his own acts.

" '2.—Because prior to his appointment as mayor, Mr. Venegas had publicly stated that he would remove the respondent from his office and that his appointment as mayor was partly due to an agreement made with his political friends, foes of the respondent, to remove him from his office.

" '3.—Because Mr. Venegas has recently made public statements to the effect that he will sustain the charges and remove the respondent, regardless of the outcome of the investigation.

" '4.—Because, notwithstanding these charges have not yet been determined, Mr. Venegas has been offering the position filled by the

respondent to other physicians, to be appointed after this investigation.

" '5.—Because Mr. Venegas has marked prejudices against the respondent and relishes his being a personal enemy of the latter.

" 'For all the foregoing reasons, the respondent prays that Mr. Leopoldo Venegas declare himself as disqualified to act in this investigation, since it is but just that the same should be conducted by an unbiased official such as the mayor's substitute would be.'

"When this motion was read, there occurred the incident reported at pages 12, 13, 14, and 15 of the stenographic record, and which for the purpose of this opinion it becomes necessary to transcribe, as follows:

" 'Mr. Ramos: We ask that this motion for disqualification be denied, on several grounds: some of form and others of substance. The first of form is that this motion for disqualification, where so grave assertions are made, actually disrespectful to the prestige and personality of the mayor who is directing this case, has not been verified; (counsel continues to argue extensively) . . . . In view of the stated circumstances I request that the motion for disqualification be denied.

" 'Mayor: The motion is denied.

" 'Counsel for respondent: With our objection, for the reason . . . we are precluded from offering evidence to support it, to support this motion for disqualification.

" 'Mayor: No.

" 'Counsel: Then we ask to be permitted to offer evidence.

" 'Mr. Ramos: I would like to be heard.

" 'Counsel: We want to know who is the mayor, Mr. Ramos or Mr. Venegas.

" 'Mr. Ramos: I would like you to pay a little attention at this moment.

" 'Counsel: Who is going to deny this, you or the mayor?

" 'Mr. Ramos: The gentleman has been a prosecuting attorney.

" 'Mr. Font: But I am no longer a prosecuting attorney.

" 'Mr. Ramos: You have been a prosecuting attorney for many years and you know that a judge never decides a question raised by either of the parties before hearing them both.

" 'Mr. Font: You are not a party.

" 'Mr. Ramos: As adviser, I represent the mayor at this moment and I am entitled to be heard and to advise him before he decides.

" 'Mr. Font: No, that is not so.

" 'Mr. Ramos: Thus, it is not that the mayor . . . in the

same manner as opposing counsel knows nothing of dental surgery, the mayor might not know anything about the law and this does not detract anything from his prestige; so my colleague asks if the mayor. . . .

" 'Mr. Font: I have not come to argue with my colleague, and I beg his pardon. It is not that I want to avoid the debate. I am addressing the mayor; we have raised a question of disqualification; and as to whether or not we are to be permitted to offer evidence in support of the motion.

" 'Mr. Ramos: I ask . . .

" 'Mr. Font: But we are now asking whether we are to be allowed to offer evidence.

" 'Mayor: Since the motion has been denied, I cannot admit evidence.

" 'Mr. Font: You forbid us from offering evidence in support of this motion for disqualification?

" 'Mayor: Yes, sir.

" 'Mr. Font: We take an exception.'

"As to the eliminations of parts of the answer and of the special defenses, sought by Mr. Ramos Antonini, the following incident occurred, reported on pages 15 to 18 of the transcript of the evidence:

" 'Mr. Ramos: Mr. Mayor, before any evidence is offered in this proceeding, we move to strike out the following particulars from the answer: In the sixth paragraph of the answer, we move to strike out all the matter beginning with "and it is affirmed to the contrary" to the end of said paragraph. In the eighth paragraph from where it says "it being the case" to the end of the sentence ending with the word "recipe." We ask further that the second and third paragraphs of the special defenses be stricken out in their entirety. The reasons we have for requesting these eliminations are: As regards the first, involving the sixth paragraph, we understand that those statements would rather be a proper ground for charges that might be specifically and separately brought by the respondent against the mayor, in a proceeding, whether of impeachment or any other adequate and proper remedy to remove the mayor from his office, but not as a defense to the charges which are now being heard. Regarding the eighth paragraph, we offer the same comments as those just made, and as regards the second and third paragraphs of the special defenses, we submit that mention therein of personal enmities of the mayor towards the respondent, of vengeful purposes sought, and of other acts of the mayor which, as in the case of the preceding paragraph, would be proper to allege as a part of the charges brought

against the mayor, but not to be set up as a defense, because this is a defense and not the bringing of charges; for these reasons we ask that they be stricken out.

" 'Counsel: We object on three main grounds: First, because the motion comes too late; second, because the motion has been made by our colleague, Mr. Ramos Antonini, who is not a party to—nor is authorized by law to participate in—these proceedings; and third, because the respondent is deprived of a right, guaranteed to him by the laws in force and by the Constitution of the United States, to be given every opportunity to defend himself and to have his day in court.

" 'Mr. Ramos: Before we go any further and a ruling is made, in order to avoid repetitions and unduly burdening the record, I shall propose to my colleagues that all my previous actions, and those following from now on to the end of the case be considered objected to by you beforehand, and in this way you know that you submit yourselves to no intervention of mine whatever, and that you are entitled to that objection.

" 'Counsel: We do not wish to enter into any compromise or stipulation whatever as to this question or any of its aspects; just as frequently my colleague Mr. Ramos takes part in any action, we shall take the exceptions to which we think we are entitled.

" 'Mr. Ramos: I think that your objection is fundamental; my proposition would have prejudiced you.

" 'Mayor: Mr. Ramos Antonini's amendment (sic) is granted.

" 'Counsel: With our exception, for the reasons stated in our objection to the motion to strike out.'

"Referring in the first place to the motion for disqualification, the court is of the opinion that facts were therein alleged which, if proved, would have disqualified the mayor to act in the hearing of the charges against Dr. Ortiz. It is not that grave assertions, disrespectful in character to the prestige and personality of the mayor, were made in the motion, as Mr. Ramos Antonini said, but that facts are stated, which, in the opinion of the court, required evidence and the respondent was denied the opportunity to prove them. It is true that according to sections 29 and 36 of the Municipal Law in force, the mayor is the only officer authorized to suspend or remove municipal officers and employees, but it is equally true that the same section 29 provides that—

" 'In case of vacancy, absence, suspension, leave of absence, disqualification, etc., of the mayor, he shall be substituted by one of the municipal administrative officers, excepting the Auditor or the ·

Secretary; and the municipal assembly shall first establish for the purpose, at one of its meetings, the order for making such substitution.'

"Thus, in cases of disqualification of the mayor to act in any given case, he may be substituted by the administrative officer designated by the Municipal Assembly. It requires no serious or extensive argument to conclude that a mayor who is the personal enemy of another municipal officer, and who publicly states such fact, is not in a position to act with an unprejudiced mind in judging said officer on charges brought by the mayor himself. The most elemental spirit of justice demanded that the motion for disqualification should not be stricken out; that evidence be introduced to support the facts therein alleged, and that the mayor should have then decided the motion on its merits, thus affording also an opportunity to this court to determine whether or not he was disqualified to act. The same considerations are applicable to the elimination of the special defenses and to the failure to admit evidence regarding the same. These were not 'niceties' in the proceeding, the right of the appellant to be tried impartially being involved. The court is of the opinion that such action on the part of the Mayor of Coamo was prejudicial to the appellant's rights. The removing officer or board is bound to act impartially and without prejudice. In 43 C.J. 664 it is said that the tribunal (the mayor) should be disinterested and impartial.—*Andrews* v. *King*, 77 Me. 224.

"    *        *        *        *        *        *        *

"The first question being thus disposed of, the court is of the opinion that it is unnecessary to enter into a consideration of the other questions involved in this appeal, namely, those referring to the proof of the charges, for, had the mayor been qualified to act—a fact which we do not decide either way—this was a question for the appreciation and analysis of said officer, and for his discretion to determine, provided that there was no absolute lack of evidence."

We have little to add to the reasoning of the trial judge. We agree with the appellant that there is nothing in the law which forbids the mayor from availing himself of legal advisers in the hearing of these cases, but a legal adviser is one thing, and the participation in the proceeding by the attorneys appointed by the mayor is another. The least that can be said is that the manner in which these so-called advisers performed their task is strange.

Moreover, the judgment appealed from is not based on the fact of such intervention, but on the result thereof contrary to the fundamental right which the officer had to an impartial trial.

It is true that under the law as the appellant says, the "mayor" is the only official authorized to remove other municipal officers, but such an official need not be the regular mayor. When the person elected mayor is disqualified to act in a given case, the law designates the person who should substitute him, and the substitute mayor is then the official qualified to determine the case.

We do not mean to say that the mayor would be disqualified by the mere fact that he is the person bringing the charges against the officer. Certainly not. The mayor is the chief executive of the municipal administration and in the discharge of his duties he may obtain direct knowledge of acts performed by the officers appointed by him which justify their removal; and in such cases, who can be in a better position than the mayor to decide the matter after hearing the officer's defense or having afforded him an opportunity to defend himself? The mayor does not act for his personal benefit, but in the interest of a good municipal administration.

But when there are imputed facts of the character alleged in the motion for disqualification, the situation changes, and the officer should be given an opportunity to produce his evidence. Should such facts be established, the disqualification would be in order.

In arguing the last error assigned, the appellant expresses himself in his brief partly as follows:

"To impose costs upon the mayor in this case means to impose costs upon the Municipality of Coamo. There is not doubt whatsoever that the charges are sufficient. The fact that there was sufficient evidence before the mayor is even clearer . . .

"In this case, the judgment of the district court, and even its affirmance by this Hon. Court, would not involve the acquittal of the respondent officer, nor the termination of the case, but its only

outcome would be the commencement of the case once more, after correcting the two errors of procedure considered by the district court as prejudicial; and the Mayor of Coamo would have to proceed with the case, which would result in Dr. Ortiz Guzmán's final removal from his office in view of the evidence, which would unquestionably be the same. Now we ask, would it be just and proper in such a case to impose costs on the Municipality of Coamo for the benefit of an officer whose guilt would eventually be declared?''

In view of all the attendant circumstances, this Court considers that costs should not have been imposed upon the mayor.

Therefore, the judgment appealed from must be modified, by striking therefrom the following words: ''with costs upon the defendant,'' and substituting in lieu thereof the following: ''without special imposition of costs''; and as thus modified, the judgment appealed from is affirmed.

Mr. Justice Wolf took no part in the decision of this case.