Richard R. SEVIGNY

v.

**CITY OF BIDDEFORD et al.**

Supreme Judicial Court of Maine.

Sept. 4, 1975.

Locke, Campbell & Chapman, by Frank G. Chapman, Augusta, for plaintiff.

William P. Donahue, Biddeford, for defendants.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

DELAHANTY, Justice.

The plaintiff, Richard R. Sevigny, utilized provisions of Rule 80B, M.R.Civ.P. to review in Superior Court (York County) the validity of the action of the City of Biddeford (City) acting through its Mayor and Council in removing the plaintiff from the office of Assessor. The defendants counterclaimed, charging the plaintiff with misconduct in office and illegal collection of salary.

Acting under an order of reference, M.R. Civ.P. 53(b)(1) a hearing was had before a referee who died prior to filing his re-

port. The parties subsequently agreed to submit all of the evidence produced before the referee to a Justice of the Superior Court for a determination on the merits. The Superior Court found for the plaintiff and ordered the City (1) to reinstate plaintiff to the office of Assessor for the term of five years ending March 4, 1974, and (2) to pay plaintiff his salary from the date of discharge. Additionally, the Court entered judgment for the individual defendants and for the plaintiff on the defendants' counterclaim. The City has appealed. We deny the appeal.

Conformable to 30 M.R.S.A. § 5351(1)(C) the Biddeford City Council enacted an ordinance which provided for a single assessor to be appointed by the Mayor for a term of up to five years, subject to confirmation by the City Council. On March 5, 1969, plaintiff was appointed single assessor for the City by Mayor Leo R. Lemire and confirmed by the Council. On March 6, 1969, plaintiff and the City, acting through the Mayor and the Finance Committee, executed an agreement providing for a five-year term of office. The statute, however, did not expressly authorize the City to enter into a contract with the person appointed as single assessor. Sevigny, meanwhile, had entered upon a discharge of his duties.

On March 11, 1970, a newly elected Mayor, Gilbert R. Boucher, suspended the plaintiff from office. Two days later, the Mayor convened the City Council and specified in writing his charges against the plaintiff.

On March 18, 1970, defendants served on the plaintiff notice of the charges against him and of the hearing scheduled by the City Council for March 23, 1970. On March 20, 1970, plaintiff commenced an action under M.R.Civ.P. 80B (an action separate from the instant one) seeking, inter alia, a preliminary and permanent injunction to prevent defendants from conducting the removal hearing. On plaintiff's motion the Superior Court ordered a "preliminary injunction" restraining defendants from holding the hearing. The court subsequently vacated its restraining order and denied to the plaintiff a "temporary injunction." The removal hearing was held before the Council on April 13, 1970. The Mayor presided at the hearing. At the conclusion of the hearing, the Council found the plaintiff guilty as to five charges and not guilty as to three. An order of removal was then presented by the Mayor and approved by the Council.

### I.

Initially, we reject defendants' contention that the Superior Court erred by granting plaintiff judgment on defendants' counterclaim. Since the Superior Court heard no testimony, but instead based its findings of facts entirely on the printed record, the purpose of the application of the clearly erroneous rule disappears, and the function of this Court is not to decide whether there was competent evidence to support the Superior Court's findings, but whether the Court's evaluation of the evidence led it to an erroneous conclusion. *Cunningham v. Cunningham*, Me., 314 A.2d 834, 839 (1974). A review of the record yields no basis for defendants' claim.

### II.

Defendant next argues that the Justice below erred in granting the plaintiff's motion for enlargement of time under M.R. Civ.P. 6(b)(2) within which he might file the complaint.[1] Service on the defendants of the summons and a copy of plaintiff's complaint was made on May 4, 1970. However, the complaint was not filed in court until August 26, 1970, and on August 28, 1970, plaintiff filed his motion for late

---

1. M.R.Civ.P. 80B(b) provides in part: "the complaint shall be filed within 30 days after notice of any action or refusal to act of which review is sought unless the court enlarges the time in accordance with Rule 6(b) . . . .."

entry. In the meantime, on May 27, 1970, defendants sought and received an extension of time to answer plaintiff's complaint until June 25, 1970. On May 19, 1971, finding that defendants' rights had not been prejudiced by the delay, the Superior Court granted plaintiff's motion for late entry. Defendants eventually filed an answer and counterclaim on September 13, 1971.

■ A motion for late entry of a pleading may be granted where the failure to file promptly is a result of excusable neglect. M.R.Civ.P. 6(b)(2). But determination of whether neglect in a particular case is excusable is directed to the sound discretion of the trial justice. Such a discretionary ruling may not be successfully reviewed unless an abuse of discretion is shown or there is error of law. *Petition of Wagner,* 155 Me. 257, 265, 153 A.2d 619, 624 (1959).

■ This Court cannot substitute its discretion for that of the Court below. Discretion implies that in the absence of positive law or fixed rule, the justice is to decide by his view of expediency, or of the demands of equity and justice. *Graffam v. Cobb,* 98 Me. 200, 206, 56 A. 645, 647 (1903). In this case the Justice did not vary from these precepts.

### III.

In an additional threshold attack on the plaintiff's present action, the defendants contend that the plaintiff was not the lawful incumbent of the office of assessor at the time of his removal. Defendants theorize that plaintiff's appointment effective March, 1969, was for a one-year term rather than a five-year term.

The Superior Court held that the defendants were barred by the doctrine of collateral estoppel from making an argument that would limit plaintiff's rightful tenure to office to less than the lawful and permitted five-year term. It appears that in the plaintiff's previous action seeking a temporary injunction to restrain the removal proceedings against him, the Superior Court, although denying injunctive relief, had stated:

> The facts which raise the threshold issue of law are not in dispute. Plaintiff is the single tax assessor of the City of Biddeford serving a five-year term.[2]

It was this portion of the Superior Court record that the Justice sought to apply as collateral estoppel against the City's present argument as to Sevigny's tenure of office.

■ Though the Superior Court erred in its ground of decision, we affirm the end result. Collateral estoppel is that aspect of res judicata which is concerned with the effect of final judgment in one action on the relitigation of the same issues by the same parties pursuant to a different cause of action. *Corey v. Avco-Lycoming Div., Avco Corp.,* 163 Conn. 309, 317, 307 A.2d 155, 160 (1972), cert. denied, 409 U.S. 1116, 93 S.Ct. 903, 34 L.Ed.2d 699 (1973). Where an essential fact or question is actually litigated on the merits and determined by a valid final judgment, the determination is conclusive between the same parties in any subsequent action based on a different cause of action. The party setting up an estoppel has the burden of showing that the same issue was determined on its merits in the prior proceedings. *Cianchette v. Verrier,* 155 Me. 74, 85–90, 151 A.2d 502, 508–10 (1959); *Bray v. Spencer,* 146 Me. 416, 418–19, 82 A.2d 794, 795–96 (1951). It is essential that the judgment be a final determination on the merits; an interlocutory judgment constitutes no bar to subsequent relitigation of the issues. *New York Central & Hudson R. R. Co. v. T. Stuart & Son Co.,* 260 Mass. 242, 157 N.E. 540 (1927). See also *Buck v. Collins,* 69 Me. 445, 448–491 (1879); *Payne v. Superior Court,* 78 R.I. 177, 183,

---

2. The action prompting this finding was voluntarily dismissed by the plaintiff without prejudice under M.R.Civ.P. 41(a)(1)(i).

80 A.2d 159, 163, 82 A.2d 167 (1951); *Miller v. Miller,* 123 Vt. 221, 224, 186 A.2d 93, 95 (1962).

An order granting or denying a temporary injunction, however, does not involve a final determination on the merits, but rather is interlocutory and preliminary in nature. *Rogers v. Hill,* 289 U.S. 582, 586–87, 53 S.Ct. 731, 77 L.Ed. 1385 (1933); *Coolbeth v. Berberian,* 313 A.2d 656 (R.I. 1974). Because of its nature, such an order cannot be successfully pleaded as collateral estoppel on issues involved in any subsequent litigation between the same parties based upon a different cause of action. *Minneapolis & St. L. Ry. Co. v. Pacific Gamble Robinson Co.,* 181 F.2d 812, 814–15 (8th Cir. 1950); *Olcott v. Pendleton,* 128 Conn. 292, 22 A.2d 633 (1941). It follows that the statement of the Justice pursuant to his denial of the temporary injunction does not estop defendant from litigating the issue in this action.

We agree with the Superior Court, however, to the extent that the defendant is estopped on other grounds. Counsel for the parties entered into a written stipulation at the removal hearing of April 13, 1970. Among other things, it was agreed that:

> "Richard R. Sevigny is the single assessor of the City of Biddeford serving a five-year term."

We accept this stipulation as designed to relieve the plaintiff of proof of the validity of his appointment on length of term. It would have been appropriate to raise these issues at the removal hearing, since that proceeding was in fact premised on the plaintiff's status as de jure Assessor of the City of Biddeford for a five-year term. But instead the City agreed that plaintiff was the lawful Assessor.

The very purpose of the Superior Court proceeding was to review the action of the defendants in removing plaintiff from office. The record is clear that such review proceeded upon the basis that facts which had been agreed upon by all parties to the administrative proceeding should be accepted as true for the purposes of review. Written stipulations made in a prior proceeding for the purpose of relieving a party from proving some fact are generally binding upon the parties in another proceeding concerning the same case. See *Holley v. Young,* 68 Me. 215 (1878). *Household Fuel Corp. v. Hamacher,* 331 Mass. 653, 121 N.E.2d 846 (1954). Thus defendants are estopped here from asserting a position contrary to that stipulated at the removal hearing. We hold that the plaintiff was the de jure single assessor of the City of Biddeford from January 1, 1969 until December 31, 1973.

IV.

We now turn to the finding of the Superior Court that by reason of personal bias toward the plaintiff, "the Mayor was disqualified from presiding and that his acting as presiding officer at the removal hearing denied to the plaintiff due process of law." Defendants argue that if any procedural irregularities existed, they did not sufficiently prejudice the plaintiff's rights to constitute a violation of due process rendering the removal proceedings invalid.

The procedure by which plaintiff was removed from office was mandated by Section 3 of the Biddeford City Charter which provides in pertinent part:

> He [the Mayor] may suspend such subordinate officers for misconduct in office, provided that within 3 days after such suspension, he shall convene the City Council and present at such meeting written charges of such misconduct. At such meeting the Council shall have power to suspend or remove such subordinate officer.[3]

3. In rejecting plaintiff's earlier request for a temporary injunction, the Superior Court found that Section 3 (supra) disclosed the exclusive procedure for removal of the city assessor. This ruling is not challenged here.

The Charter also provides that the Mayor shall preside in the City Council, but that if the Mayor is unable to preside, the President of the City Council shall do so. The Mayor was not compelled to preside at the removal hearing. He chose to do so however, over plaintiff's objection.

 For nearly a century it has been the law in this State that a proceeding to remove an incumbent from public office is judicial in nature,[4] and that municipal officials in such removal proceedings must assume the role of a deliberate, unprejudiced tribunal and provide the incumbent with a full and fair hearing. *Andrews v. King,* 77 Me. 224 (1885). See *State v. McLellan,* 117 Me. 73, 102 A. 778 (1918). In *Andrews,* supra, this Court while holding that it was not necessarily improper for a Mayor to present the charges and preside at the removal hearing, ". . . he should not prejudge the case; he should not act as prosecutor at the hearing; there, he should divest himself of his executive functions and assume the judicial; he should suspend his own judgment till the hearing is completed, that it may be the result of the hearing, and not of a pre-conceived opinion." Id. 77 Me. at 234. See *Hawkins v. Common Council of City of Grand Rapids,* 192 Mich. 276, 158 N.W. 953 (1916). The record amply supports the Superior Court's finding that in this case the demands of *Andrews,* supra, were not fulfilled.

 Moreover, a procedural rule, adopted by the Council and approved by the Mayor for the removal hearing read in part as follows:

The presiding officer shall decide on the question of the admissibility of evidence, procedure, practice and pleading and from his decision there shall be no appeal.

This procedural device indulged the Mayor, as presiding officer, with absolute control of the hearing procedure. Such adversary proceedings as these, distinct from, and more solemn than, those in most municipal affairs, proceedings so summary, affecting the character of a citizen office-holder, should bear a reasonable semblance of procedural due process.

As we read the record, it is apparent that a strained relationship, bordering on animosity, existed between Mayor Boucher and Sevigny at the time of the hearing. There was direct and admissible evidence tending to show the extent of the Mayor's hostility against Sevigny. Laced among the Mayor's animadversions leveled at the plaintiff was the admitted assertion that the Mayor's first act in office would be to "get the Assessor."

 It is plainly established that not only did the Mayor appear to be the chief victim of certain of alleged acts of misconduct charged against the plaintiff, but several of the alleged acts occurred prior to the time the Mayor took office. We conclude that the Mayor did not approach his duty as a presiding officer at the hearing with the requisite freedom from bias and prejudgment. We are compelled to find, in this instance, that the Mayor's failure to recuse, in spite of valid objections to his role as presiding officer, so prejudiciously tarnished the entire removal hearing as to deny to the plaintiff his right to procedural due process.

Our conclusion of due process denial renders unnecessary consideration of plaintiff's additional claims that the Council never did actually decide that the charges of which the plaintiff was found guilty constituted sufficient grounds for removal, or that the charges were not in fact legally sufficient. The plaintiff's rights were prej-

---

4. By "judicial in nature" we mean simply that the particular proceeding must adhere to certain formalities and safeguards which are characteristic of, although not unique to, the Judicial branch of government. See *Opinion of the Justices,* Me., 343 A.2d 196 at 203 (August 20, 1975).

udiced to such a degree that the findings are themselves suspect.

## V.

Concluding as we do that the City failed to accord to the plaintiff the root formality and procedural requisites of a due process hearing, we think that the nature of the plaintiff's relief for his unwarranted removal is of seminal import. Sevigny pursued a course under M.R.Civ.P. 80B seeking reinstatement with back pay or in the alternative, damages for breach of contract. Correctly noting that contract damages may not be anchored to an 80B complaint, in rendering its judgment for the plaintiff the Superior Court interpreted the complaint as separate claims for 80B review against the City, and for damages against the City and the individual defendants.

The employment contract entered into between Mayor Lemire and Sevigny was found by the presiding Justice to be totally insufficient for the reason that it lacked ratification by the City Council. Since no cross-appeal challenges this finding of contractual unenforceability, the issue is no longer viable.

The plaintiff's right to his salary, however, is not dependent upon contract, but upon his legal right to the office of single assessor. *Andrews v. City of Portland,* 79 Me. 484, 10 A. 458 (1887). See *Wardwell v. Inhabitants of Castine,* 154 Me. 123, 127, 144 A.2d 530, 532 (1958); *Mahoney v. City of Biddeford,* 130 Me. 295, 297, 155 A. 560, 561 (1931).

 Sevigny's appointment was made conformable to the appropriate statute and ordinance. On the date of his removal, plaintiff was single assessor de jure. The legal right to the office carried with it the right to the salary or emoluments of that office. The salary follows the legal title. *Andrews v. City of Portland,* 79 Me. 484, 490, 10 A. 458 (1887).

Relying on *Andrews v. City of Portland,* supra, the Superior Court directed the City to pay to the plaintiff back pay from the date of removal to the date of either reinstatement or an offer of reinstatement if declined by the plaintiff. However, the record does not provide a factual basis on which we are able to ascertain plaintiff's damages. Thus we are unable to write the final chapter to this saga. This chore must rest with the Superior Court on our remand.

 We note that this Court has not been apprised whether plaintiff has ever been reinstated or offered such reinstatement. We are also uninformed on this record whether the office of single assessor was abolished in good faith by the City at any time during the remainder of the plaintiff's lawful term, April 13, 1970 to December 31, 1973. This question is material for the reason that a public office such as single assessor, created by municipal ordinance, may also be abolished by ordinance, provided that such action is taken in good faith. *Williams v. City of New Bedford,* 303 Mass. 213, 215, 21 N.E. 2d 265, 266 (1939). The legal holder of the office ceases to be such upon its good faith abolition, and his right to compensation also ceases. This is so regardless of whether the term to which the officer originally was appointed had expired at the time of abolition. Id. Cf. *Dingley v. City of Bath,* 112 Me. 93, 90 A. 972 (1914).

 Furthermore, even assuming that the office of single assessor did exist through December 31, 1973, the record does not reveal what salary was fixed by the City Council for the period during which plaintiff was deprived of his office. Sevigny is entitled to recover only such compensation as was fixed by the City Council for the office of single assessor during the period of his five-year term.

The entry must be:

Appeal denied.

Remanded to the Superior Court for a determination of damages to which the

plaintiff is entitled consistent with this opinion. In fixing damages, the Superior Court will ascertain:

1. Whether the office of single assessor of the City of Biddeford was abolished in good faith by the City Council during the period from April 13, 1970 to December 31, 1973.

2. Whether plaintiff was reinstated or offered reinstatement at any time following the Superior Court's Order until December 31, 1973.

3. The salary fixed by the City Council for the office of single assessor during the period from April 13, 1970 to December 31, 1973.

Upon entry of judgment, plaintiff shall be entitled to interest and costs.

All Justices concurring.