Roderick FRYE

v.

**INHABITANTS OF the TOWN OF CUMBERLAND.**

Supreme Judicial Court of Maine.

Argued Jan. 4, 1983.

Decided Aug. 15, 1983.

Richardson, Tyler & Troubh by Wendell G. Large (orally), William B. Troubh, Portland, for plaintiff.

Jensen, Baird, Gardner & Henry by Kenneth M. Cole, III (orally), Nicholas Nadzo, Michael A. Nelson, Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, CARTER,* VIOLETTE and WATHEN, JJ.

* Carter, J., sat at oral argument and participated in the initial conference but resigned before this opinion was adopted.

ROBERTS, Justice.

Roderick Frye filed two complaints, later consolidated, in the Superior Court, Cumberland County, which sought relief from the decision of the Town Manager of the Town of Cumberland dismissing Frye from his position as a police officer with the Cumberland Police Department. The Superior Court denied relief, concluding that none of Frye's contentions required either remand or reinstatement. On appeal to the Law Court, Frye contends, as he did in the Superior Court (1) that his dismissal violated the procedural requirements of 30 M.R.S.A. § 2361 (Supp.1982–1983); (2) that the Town Manager, who presided at Frye's subsequent dismissal hearing, was not an impartial hearing officer and permitted the introduction of improper evidence; and (3) that the Town Manager's decision was not supported by substantial evidence on the record as a whole. In addition, Frye argues on appeal that the Superior Court erred in denying either discovery or an evidentiary hearing on the issue of any possible bias on the part of the Town Manager acting as the hearing officer. We modify the judgment of the Superior Court and, as modified, affirm.

I.

In November of 1979, the Chief of Police of the Cumberland Police Department suspended Frye pending an investigation of alleged violations of several department regulations. By letter dated December 10, 1979, the police chief informed Frye that the investigation of the charges had been completed and that: "Your employment with the Cumberland Police Department is hereby terminated as of this date." Another letter from the police chief, dated December 13, 1979, informed Frye that: "Prior to any final action as to your employment with the Town, you have the right, pursuant to Title 30, Section 2361 ... to seek a hearing before the Town Manager."

On January 3, 1980, the plaintiff filed the first of two complaints in Superior Court, naming the Town of Cumberland, the Cumberland Police Department, the Town Manager, and the Chief of Police, as defendants. The first complaint alleged termination of Frye's employment without notice and a hearing in violation of 30 M.R.S.A. § 2361 and the due process provisions of the United States and Maine Constitutions. The complaint requested an order reinstating Frye as a full-time police officer, with "back pay" and costs. In essence, Frye's first complaint was based upon his claim that the delivery of the notice of dismissal, prior to any statutory hearing, would render any subsequent hearing invalid. At the same time, the plaintiff filed a motion requesting a stay of the dismissal hearing pending a judicial decision on the merits of his complaint. The Superior Court denied the request for a stay.

Frye's dismissal hearing proceeded as scheduled on January 10, 1980. The hearing was conducted before the Town Manager.[1] The Chief of Police presented the Town's case, calling witnesses and submitting documents into evidence. Frye was represented by counsel and had the opportunity to present and cross-examine witnesses.

The Town Manager issued a "final decision" on February 7, 1980. The decision included findings of violations in three of four general categories of charges and concluded that Frye's dismissal was proper. The Town Manager also awarded Frye $740.35, representing wages due up to the date of the hearing.

On March 7, 1980, Frye filed his second complaint in Superior Court. The second complaint repeated the allegations and demands of the first complaint, but also alleged that: (1) the dismissal hearing was not held before an impartial hearing officer; (2) Frye was prejudiced by unfair evidentiary rulings and by severely limited opportunities to present direct testimony and to cross-examine witnesses; (3) the findings were not supported by substantial evidence, and (4) the hearing officer misapplied the law because the findings did not amount to "cause" for dismissal. Frye also demanded additional compensation for the period between the January 10 dismissal hearing and the February 7 administrative decision.

Thereafter, in response to the plaintiff's notice of deposition, the Town Manager moved for a protective order pursuant to M.R.Civ.P. 26(c). Following a hearing, the Superior Court ordered the deposition "cancelled." At the same time, upon the plaintiff's motion, the Superior Court consolidated the two complaints pursuant to M.R. Civ.P. 42.

By order dated December 10, 1981, the Superior Court denied any relief to the plaintiff. In his decision the Superior Court justice concluded that (1) substantial evidence exists on the record to support the findings; (2) the plaintiff was not prejudiced by the Town Manager's evidentiary rulings; (3) the plaintiff's contention that he was not dismissed for cause was without

---

1. The Town Manager served as the hearing officer, apparently on the basis of Article 3, Section 2(a)(1) of the Council-Manager Charter of the Town of Cumberland which reads as follows:

Sec. 2. *Powers and Duties of Town Manager.* The town manager shall be the chief administrative officer of the town. He shall be responsible to the council for the administration of all town affairs placed in his charge by or under this charter. He shall have the following powers and duties:

(a) . . .

(1) He shall appoint and remove with cause the Town Clerk and department heads, including but not limited to Chief of the Police Department, Chief of the Fire Department and Health Officer, Constable and all other administrative officers and town employees except as he may authorize the head of a department or office to appoint or remove subordinates in such department or office and except as otherwise provided by law, by the Charter, or by personnel rules adopted by this Charter.

The parties do not question on appeal and we express no opinion on the Superior Court's ruling that the Town Manager was the appropriate hearing officer under the Council-Manager Charter of Cumberland.

merit; and (4) the Town Manager acted properly in not recusing himself and the plaintiff did receive an impartial hearing that was "in all respects procedurally fair."

## II.

■ Title 30 M.R.S.A. § 2361(1) (Supp. 1982–1983) provides that: "Police officers ... may be removed for cause *after* notice and hearing." (Emphasis added.) On the basis of this language Frye argues that because he received a letter from the Chief of Police purporting to dismiss him *prior* to a formal dismissal hearing, his subsequent termination by the Town Manager was void. Undeniably, the purpose of section 2361(1) is to insure that municipalities comply with certain due process rights before discharging a police officer. *See* L.D. 231, Statement of Fact (109th Legis.1979). On the facts of this case, however, we find no merit in Frye's contention that the police chief's actions, which were corrected within three days, constitute a violation of section 2361(1).

■ First, Frye asks this Court to assume that his hearing occurred *subsequent* to his dismissal. Although the letter of dismissal may have been premature, the true effect of the letter was only a suspension both because Frye has a statutory right to a hearing and because Frye was subsequently awarded partial back pay. Second, even if the plaintiff's contention regarding the timing of the hearing is technically correct, the record reveals that he was afforded adequate notice and a meaningful opportunity to be heard prior to any *final* determination by the Town Manager. Finally, Frye's suggestion that a temporary lapse in procedural regularity alone should serve as grounds for this or any court to grant him reinstatement or immunity from any further proceedings with respect to these particular charges is patently erroneous. *See Barber v. Inhabitants of the Town of Fairfield,* 460 A.2d 1001 (Me.1983).

■ Frye next argues that the Town Manager's failure to disqualify himself as the hearing officer "irreparably tainted"

the dismissal hearing and violated Frye's due process rights. Frye contends that the Town Manager's involvement in the investigation was sufficiently "deep" to render an impartial hearing impossible. Prior to the dismissal hearing the Chief of Police provided the Town Manager with the notices of suspension and termination and with the allegations supporting these notices—purportedly pursuant to the Town Manager's role as chief administrator of the Town. Hence, the plaintiff contends that the Town Manager had prior contact and knowledge of the investigation which made an impartial hearing impossible.

We have previously observed, in the context of a Board of Registration in Medicine proceeding, that:

> [T]he combination of investigator, prosecutor and sitting member of the adjudicatory panel, even if ostensibly a nonparticipating member, creates an intolerably high risk of unfairness. *See Withrow v. Larkin,* 421 U.S. 35, 58, 95 S.Ct. 1456, 1470, 43 L.Ed.2d 712, 730 (1975). We shall not approve that practice in our review of future proceedings of this Board or those of other administrative agencies.

*Gashgai v. Board of Registration in Medicine,* 390 A.2d 1080, 1082 n. 1 (Me.1978). In *Gashgai,* the Board of Registration in Medicine, which was the administrative agency responsible for the licensing and discipline of physicians, charged Dr. Gashgai with "unprofessional conduct" and, following an administrative hearing, placed him on probation for one year. The charges were investigated by a Dr. George Sullivan as a consultant for the State Department of Health and Welfare. Originally the charges were presented to an ethics committee of the Maine Medical Association; however, in a separate action, the Law Court suppressed the committee's report of the case. Meanwhile, the Board commenced proceedings, and Dr. Sullivan signed the complaint in his capacity as Secretary of the Board. Dr. Sullivan also sat with the Board during its hearing, and ad-

mitted he had a copy of the suppressed report.

In a more extreme case of procedural irregularity in a dismissal hearing we stated that:

> For nearly a century it has been the law in this State that a proceeding to remove an incumbent from public office is judicial in nature, and that municipal officials in such removal proceedings must assume the role of a deliberate, unprejudiced tribunal and provide the incumbent with a full and fair hearing. *Andrews v. King,* 77 Me. 224 (1885). *See State v. McLellan,* 117 Me. 73, 102 A. 778 (1918). In *Andrews, supra,* this Court while holding that it was not necessarily improper for a Mayor to present the charges and preside at the removal hearing, [stated that] "... he should not prejudge the case; he should not act as prosecutor at the hearing; there, he should divest himself of his executive functions and assume the judicial; he should suspend his own judgment till the hearing is completed, that it may be the result of the hearing, and not of a preconceived opinion." *Id.* 77 Me. at 234.

*Sevigny v. City of Biddeford,* 344 A.2d 34, 40 (Me.1975) (footnote omitted). *Sevigny* involved an attempt by a newly-elected Mayor to remove the plaintiff from the office of Assessor. The Mayor both suspended the plaintiff from office and presided at the subsequent removal hearing. Evidence in the record indicated that at the time of the hearing "a strained relationship, bordering on animosity" existed between the Mayor and the plaintiff. *Id.* As a result, the Law Court concluded that the Mayor lacked "the requisite freedom from bias and prejudgment" to serve as a presiding officer, and as a result, "the City failed to accord the plaintiff the root formality and procedural requisites of a due process hearing." *Id.* at 40–41.

We find no evidence in the record to suggest that the Town Manager's role in Frye's dismissal rose to the improper level found in either *Gashgai* or *Sevigny.* This view is supported further by the United States Supreme Court which stated, in the context of review hearings for termination of welfare entitlements, that "prior involvement in some aspects of a case will not necessarily bar a welfare official from acting as a decision maker." *Goldberg v. Kelly,* 397 U.S. 254, 271, 90 S.Ct. 1011, 1022, 25 L.Ed.2d 287, 301 (1970). The Supreme Court agreed with the District Court reasoning that:

> Since the review ... is by another employee of the welfare agency, there is a possibility that the reviewing official will have had some prior official contact with the case. However, we are unable to say that the possible involvement of that official in aspects of a case prior to the review of proposed termination necessarily disqualifies him from conducting a fair hearing. Some degree of previous familiarity and informal contact with a case by a hearing officer is a common phenomenon in many administrative agencies. That the review officer is familiar with, or even has formulated opinions about, the facts of a case prior to review is not in itself sufficient to disqualify him.

*Kelly v. Wyman,* 294 F.Supp. 893, 907 (S.D. N.Y.1968) (footnote omitted), *aff'd sub nom. Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287. Hence, we find no grounds on this record for the Town Manager's disqualification as hearing officer.

■ Frye next contends that the Superior Court's failure to permit either a deposition of the Town Manager or an evidentiary hearing on the Town Manager's possible bias, improperly prevented any discovery or presentation of evidence tending to show prejudice. The Superior Court order "cancelling" completely the manager's deposition, *prior* to commencement of the deposition was both improvident and contrary to the intent of M.R.Civ.P. 26(c)(1). A more narrow protective order, permitting the deposition while precisely delineating certain limited areas in which inquiry would be proscribed, would have been more appropriate. Under the circumstances of this case,

however, we are not satisfied that Frye has demonstrated sufficient prejudice to warrant remand for further hearing.

■ Frye would not normally be permitted to inquire into the mental processes of an administrative decisionmaker. *Citizens To Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136, 155–56 (1971) ("[I]nquiry into the mental processes of administrative decision-makers is usually to be avoided .... And where there are administrative findings that were made at the same time as the decision ... there must be a strong showing of bad faith or improper behavior before such inquiry may be made.") In argument before the Superior Court as well as on appeal, Frye apparently conceded that the general rule prohibits such inquiry in the absence of a *prima facie* showing of misconduct. He now maintains, however, that he has "introduced sufficient evidence to satisfy that standard."

To support his contention that the evidence demonstrates the Manager's misconduct, Frye focuses upon the Manager's prehearing contact with the Chief of Police. As we noted above, routine administrative contact by a governmental official constitutes neither misconduct nor grounds for disqualification. Frye does not argue that a town manager is not the appropriate tribunal before which to hold the statutory hearing.[2] Rather, Frye contends that this particular manager was biased against this particular police officer.

We uphold the denial of discovery on the basis that appellant failed to make a sufficient showing in the trial court. We note that Frye testified at the administrative hearing. He had ample opportunity to describe any bias or prejudice of which he was aware. The evidence simply does not suggest the kind of bias which Frye now seeks to demonstrate. Nor has Frye demonstrated that any other or further inquiry would be likely to yield evidence beyond that in the record. For the reasons stated above,

we hold that any abuse of discretion in the denial of discovery does not warrant a remand and, for similar reasons, we find no reversible error in the denial of an evidentiary hearing.

■ The plaintiff also argues that "the introduction of hearsay testimony and other improper evidentiary rulings precluded the plaintiff from effective cross-examination and therefore, rendered the hearing unfair." He also maintains that these evidentiary rulings demonstrate the Town Manager's bias. We reject this argument.

This Court has previously adopted the "widely accepted proposition that the highly technical rules of evidence are not, and should not, be applicable to administrative proceedings." *In re Maine Clean Fuels, Inc.,* 310 A.2d 736, 748 (Me.1973). We have stated that:

> When ... review of the record reveals reliable, probative evidence in support of the agency findings and conclusions, the fact that irrelevant or incompetent evidence was admitted ... does not amount to reversible error.... Only when the agency is shown to have relied upon incompetent evidence to the prejudice of the complaining party can the admission of such evidence require reversal of the agency decision.

*In re Ryerson Hill Solid Waste Disposal Site,* 379 A.2d 384, 391 (Me.1977) (quoting *Maine Clean Fuels,* 310 A.2d at 749). This relaxed evidentiary rule is also embodied in Maine's Administrative Procedure Act, 5 M.R.S.A. § 9057 (1979):

**§ 9057 Evidence**

**1. Rules of privilege.** Unless otherwise provided by statute, agencies need not observe the rules of evidence observed by courts....

**2. Evidence.** Evidence shall be admitted if it is the kind of evidence upon which reasonable persons are accustomed to rely in the conduct of serious affairs. Agencies may exclude irrelevant or unduly repetitious evidence.

---

**2.** *See supra* note 1.

In short, the mere admission of incompetent evidence, including hearsay evidence, *see Maine Clean Fuels,* 310 A.2d at 748 (quoting *Willapoint Oysters, Inc. v. Ewing,* 174 F.2d 676, 690 (9th Cir.1949)), does not relieve an appellant of the affirmative burden to show prejudice. *Ryerson,* 379 A.2d at 391; *Maine Clean Fuels,* 310 A.2d at 748–49. Under this standard we conclude that Frye received a fair administrative hearing that was free from bias. Frye was represented by counsel who had adequate time for preparation. Counsel was also afforded adequate opportunity to cross-examine and call his own witnesses. We cannot say that the Town Manager's evidentiary rulings prejudiced Frye's case.

Finally, we reject Frye's contention that the Town Manager's decision is not supported by substantial evidence on the record as a whole. *See, e.g., Winship v. Brewer School Committee,* 390 A.2d 1089, 1092–93 (Me.1978). After a careful review of the entire record, we have determined that "on the basis of all of the testimony and exhibits" before him, the Town Manager could "fairly and reasonably find the facts as [he] did." *Id.* at 1093 (quoting *Maine Clean Fuels,* 310 A.2d at 741).

▮▮▮ The plaintiff also contends, however, that the Town Manager incorrectly applied the law to his findings. The findings, the plaintiff argues, fail to support a determination of "cause" for dismissal as the statute requires. *See* 30 M.R.S.A. § 2361(1); *cf. Wright v. Superintending School Committee, City of Portland,* 331 A.2d 640, 645–47 (Me.1975) (construing the meaning of "unfitness to teach"). Although we have not previously examined the concept of "cause for dismissal" as found in this statute,[3] older Maine cases suggest that the principle was originally introduced into statutes and case law to protect public employees from mass political firings upon the election of a new administration. *See, e.g., Andrews v. King,*

77 Me. 224. In the modern context, "cause for dismissal" is associated with due process guarantees, such as notice and a hearing, *see* L.D. 231; *cf. Barber,* 440 A.2d 1001 (property interest in public employment requires due process protection), but remains a flexible concept. A New Jersey court explains that:

> The undifferentiated "cause" type of removal provision is manifestly broader and more inclusive than is the definitional type in respect of the nature of the conduct which will justify removal.

> .    .    .    .    .

> "Cause" in this context is a concept which, like all of the enduring principles of the common law, is certain as a matter of legal import while being at the same time extremely elastic as a matter of specific application. It means, essentially, "such cause as is 'plainly sufficient under the law and sound public policy'" and has "reference to a substantial cause touching qualifications appropriate to the office or employment or to its administration." *Berardi v. Rutter,* 42 N.J.Super. 39, 47, 125 A.2d 877, 881 (App.Div.1956), *aff'd sub nom. In re Berardi,* 23 N.J. 485, 129 A.2d 705 (1957). It also necessarily implies such degree of misconduct or culpability on the part of the office holder as clearly implicates the public interest in precluding his continuance in that particular office.

*Golaine v. Cardinale,* 142 N.J.Super. 385, 395, 361 A.2d 593, 598 (N.J.Super.Ct.Law Div.1976), *aff'd,* 163 N.J.Super. 453, 395 A.2d 218 (App.Div.1978). The Town Manager's finding of violations of department regulations in three of four general categories amply supports his conclusion that "discipline short of dismissal would have been ineffective and detrimental to the department as a whole."

▮▮▮ We find no reversible error in either the Town Manager's or the Superior Court's decision. We do acknowledge, however,

---

3. We distinguish the school teacher cases which the parties cite in their briefs. *E.g., Winship,* 390 A.2d 1089; *Wright,* 331 A.2d 640. Although those cases lend some assistance to our analysis, they deal with statutory language different from that in the case at bar.

that Frye was awarded wages up to the date of the hearing, January 10, rather than the date of decision, February 7. We hold that Frye's removal under 30 M.R.S.A. § 2361(1) became effective only upon the decision of the Town Manager. Accordingly, we modify the judgment in CV 80–309 to direct the Town of Cumberland to pay Frye his regular wages for the period from January 10, 1980 to February 7, 1980. As so modified, we affirm the judgments of the Superior Court.

The entry is:

Judgment in CV 80–12 affirmed.

Judgment in CV 80–309 modified to direct the payment of back wages in accordance with the opinion herein and, as so modified, affirmed.

All concurring.