STATE OF MAINE                                    SUPERIOR COURT
                                                     CIVIL ACTION
YORK, ss.                                      DOCKET NO. AP-07-03


LYNDON ABBOTT,

            Plaintiff

      v.                                            ORDER

DONALD L. GARBRECHT
          LAW LIBRARY

SEP 0 7 2007

INHABITANTS OF THE TOWN OF
SANFORD, MAINE, MARK GREEN
and THOMAS JONES,

            Defendants


      This matter comes before the Court on Defendants' motion to dismiss, which will

be Granted in part and Denied in part, as follows.

## BACKGROUND

      Plaintiff Lyndon Abbott ("Abbott") is a former employee of Defendant Town of

Sanford ("the Town"), a Maine municipal corporation located in York County. Abbott

served in the Sanford Police Department for 22 years and had attained the rank of

Major by the time he left the Town's employ. Defendant Thomas Jones ("Jones") is the

Chief of the Sanford Police and Defendant Mark Green ("Green") is the Town Manager.

      In October 2006, a rumor surfaced that Abbott was romantically involved with a

Town official. According to the defendants, such a relationship would violate the Police

Department's Rules and Code of Ethics, its Standard Operating Procedures, and Town

personnel policies. Abbott claims that this rumor was "unsubstantiated and

anonymous," and was repeated by Major Gordon Littlefield to Chief Jones, although

the original source of the rumor is apparently unknown. Chief Jones met with Green[1] to discuss the issue and then questioned Abbott regarding the alleged extramarital affair. Abbott denied having such a relationship and stated that he merely was a friend of the other party.[2] The Town then continued its internal investigation, placing Abbott on administrative leave with pay.

Abbott testified at a hearing under oath on October 20, where he again denied having an extramarital affair. The Town gave Abbott notice of the allegations against him, along with its proposal for disciplinary action. In its notice, the Town proposed termination not only due to the affair, but also because it claimed Abbott lied about the affair. The Town conducted two more hearings, on November 21-22 and December 1, at which Abbott was represented by counsel. On December 14, the Town officially discharged Abbott. This result was posted on the Town of Sanford's website.

In January 2007, Abbott filed a six-count complaint against Jones, Green, and the Town, seeking relief under M.R. Civ. P. 80B (Count I) and alleging civil conspiracy (Count II), violation of his due process rights (Count III), and intentional infliction of emotional distress (Count IV). Abbott also seeks a declaratory judgment (Count V) and punitive damages (Count VI). All defendants moved to dismiss Counts II - VI for failure to state a claim upon which relief could be granted, also raising immunity as a defense to the emotional distress claim.

## DISCUSSION

1. Standard of Review.

A motion to dismiss "tests the legal sufficiency of the complaint." *Livonia v. Town of Rome*, 1998 ME 39, ¶ 5, 707 A.2d 83, 85. The Court should dismiss a claim only

---

[1] The Town Manager acts in a quasi-judicial capacity. *See* Town Charter § 3023.
[2] Neither side has disclosed the identity of the other party.

"when it appears 'beyond doubt that [the] plaintiff is entitled to no relief under any set of facts that [it] might prove in support of [its] claim.'" *McAfee v. Cole*, 637 A.2d 463, 465 (Me. 1994) (quoting *Hall v. Bd. of Envtl. Protection*, 498 A.2d 260, 266 (Me. 1985)). Although the Court typically restricts itself to the complaint when evaluating a motion to dismiss, it also may consider documents to which the complaint refers if their authenticity is not challenged.[3] *Moody v. State Liquor & Lottery Commn.*, 2004 ME 20, ¶¶ 9-10, 843 A.2d 43, 47-48. Doing so will not convert the motion to dismiss into a motion for summary judgment. *Id.*

2. <u>Conspiracy Claim.</u>

To prevail on a claim for civil conspiracy, a plaintiff must allege "the actual commission of some independently recognized tort." *Potter, Prescott, Jamieson & Nelson v. Campbell*, 1998 ME 70, ¶ 8, 708 A.2d 283, 286. To the extent Abbott alleges conspiracy as an independent, stand-alone tort claim, as distinguished from a theory imposing vicarious liability, this claim is dismissed. As conspiracy is not a separate tort claim, this count may not go forward as pled.

3. <u>Due Process Claim.</u>

Abbott has alleged a violation of his due process rights under Article I, Section 6-A of the Maine Constitution. The Town argues that this provision does not create a private right of action, and that such a claim would have to be brought under the Maine Civil Rights Act ("MCRA"), which provides legal and equitable remedies to plaintiffs who argue that their constitutional rights have been violated. *See* 5 M.R.S.A. § 4682(1-A). This section, however, is limited to deprivation of rights by a state actor "by physical force or violence," and would not apply to Abbott's claim regarding the fairness of his hearing. *See id.*

---

[3]     The Court may consider the personnel policies included in the file.

Maine cases, however, have discussed due process rights in the context of employment. The Law Court has stated that "a necessary predicate for [a due process claim] is a cognizable property interest." *Carroll F. Look Constr. Co. v. Town of Beals*, 2002 ME 128, ¶ 11, 802 A.2d 994, 997. Viewing the facts most favorably to Abbott, his complaint establishes that he had a 22-year career with the Sanford Police. This is enough to demonstrate a potential property interest in that position[4], and the nature of any such interest will need to be established through discovery. It is too early to determine that, beyond a doubt, Abbott is entitled to no relief on this basis. The motion on this claim is Denied.

    4.    <u>Intentional Infliction of Emotional Distress Claim</u>.

        a.    <u>Discretionary Function and MWCA Immunity</u>.

First, the Town argues that it is immune from tort claims such as this under the Maine Tort Claims Act ("MTCA"). The MTCA provides that governmental entities typically are immune from liability for the intentional torts of their employees. 14 M.R.S.A. § 8103(1) (2005). Although governmental *employees* face liability for their intentional torts, "immunity is the rule and liability the exception for *governmental entities*." *Carroll v. City of Portland*, 1999 ME 131, ¶ 6 n.3, 736 A.2d 279, 282 n.3. Here, the Town is immune from the tort claims raised in Counts II and III.

The analysis differs for the Town employees. Employees are entitled to immunity under the MTCA for "performing or failing to perform a discretionary function or duty, whether or not the discretion is abused." 14 M.R.S.A. § 8104-B(3) (2005). To determine whether an act is a discretionary function, the Law Court employs

---

[4] For example, this Court determined that an adjunct instructor at a local college who did not have an employment contract nevertheless had a property interest in his position there because he had a "reasonable expectation of continued employment." *Smith v. Southern Me. Community College*, CUMSC-AP-2003-62 (Me. Super. Ct., Cum. Cty., May 31, 2005) (Humphrey, J.).

a four-factor test: (1) whether the act "involve[s] a basic governmental policy, program, or objective; (2) whether the act was "essential to the realization" of the policy; (3) whether it demanded "the exercise of basic policy evaluation, judgment, and expertise;" and (4) whether the agency had legal "authority and duty" to act. *Adriance v. Town of Standish*, 687 A.2d 238, 240 (Me. 1996) (*citing Darling v. Augusta Mental Health Inst.*, 535 A.2d 421, 426 (Me. 1987)). If, however, an employee's behavior "is found to exceed the scope of his or her discretion, that immunity may not apply." *Lewis v. Keegan*, 2006 ME 93, ¶ 14, 903 A.2d 342, 346. Ascertaining the scope of an employee's discretion may "require determination by the fact-finder." *Id.*

Green and Jones allege that they are entitled to immunity for performing the discretionary function of investigating Abbott's conduct. Viewing the facts most favorably to Abbott, however, he has alleged sufficient facts to indicate that Green and Jones may have exceeded the scope of their investigatory discretion. If they did, they would forfeit their immunity for this intentional tort. At this early stage, insufficient factual development has occurred to allow the Court to determine whether immunity applies and whether, if so, Green and Jones somehow forfeited that immunity. Dismissal on this basis would be premature.

In addition, both defendants contend that the Maine Worker's Compensation Act ("MWCA") is another source of immunity. The MWCA provides that governmental entities and employees are immune for employee personal injury claims "arising out of or in the course of employment." 39-A M.R.S.A. § 104 (2005). The Act "bars all common law claims that arise out of work-related injuries in the course of employment." *Gordan v. Cummings*, 2000 ME 68, ¶ 13, 756 A.2d 942, 945. "The substantive determination of whether a defendant is immunized from civil liability under the WCA turns on a wide examination of factors." *Clark v. Means*, 2002 WL 89037

5

(Me. Super. Jan. 14, 2002). For example, in *Clark*, the trial court denied the defendant's motion to dismiss the plaintiff's tort claims due to MWCA immunity because the complaint was not required to be "a comprehensive rendition of all of the circumstances that might be relevant to" the immunity analysis. *Id.*

Here, the allegations involve conduct outside the scope of Abbott's employment that seems to have impacted his employment, but that impact does not necessarily render the alleged behavior employment-related. Although the defendants contend that Abbott's participation in the investigation constitutes proof that it was employment-related, Abbott was placed on leave and was required by his supervisors to participate in hearings. Such involuntary participation should not bar Abbott's claims regarding those hearings due to MWCA immunity.

Also, it is unclear at this early stage whether Jones and Green's behavior in the course of the investigation, or the investigation itself, would constitute a "work-related injury," as Abbott's alleged conduct involved his personal life, not his service on the police force. Determining whether such an injury arose "out of or in the course of employment" involves an inherently factual inquiry. *See Knox v. Combined Ins. Co. of America*, 542 A.2d 363, 366 (Me. 1988) (remanding sexual assault claim for fact-finding regarding potential MWCA immunity). The MWCA, therefore, is not a proper basis for dismissing this claim until a more substantial record is developed that would support immunity.

b.    Merits of IIED Claim.

Turning to the underlying claim, to establish a claim for IIED, a plaintiff must show that the defendant intended to inflict emotional distress or recklessly did so; that defendant's conduct was "so extreme and outrageous as to exceed all bounds of decency"; and that the conduct in fact caused severe distress to the plaintiff that an

6

ordinary person "could not be expected to endure." *Colford v. Chubb Life Ins. Co. of America*, 687 A.2d 609, 616 (Me. 1996) (citations omitted).

Again viewing the facts favorably to Abbott, he has satisfied the minimum showing to survive a motion to dismiss on this claim. He has alleged an intentional campaign to oust him on the part of the Town officials. Assuming the truth of the facts Abbott alleged, "extreme and outrageous" behavior may be proven because allegations of an extramarital affair, which Abbott denied, resulted in the end of his 22-year career just a few months after they surfaced. Understandably, this could cause him severe distress. Abbott also notes that he was severely distressed by the publication of his termination on the Town's website. Although this information could have been obtained via the Freedom of Access Act, Abbott correctly notes that there is some difference between making information available upon request and deliberately publicizing it without such a request. Whether the actions of the officials were so "extreme and outrageous" that they would survive summary judgment remains to be determined; however, Abbott has averred enough facts in his favor to withstand a motion to dismiss.

5.  <u>Declaratory Judgment Claim</u>.

Abbott also seeks a declaratory judgment per 14 M.R.S. § 5951 (2005). A declaratory judgment action is a long-recognized method by which a person can obtain "a binding judicial determination of [his or her] legal rights" in property. *Colquhoun v. Webber*, 684 A.2d 405, 411 (Me. 1996). Thus, to state a claim for declaratory judgment, Abbott would have to allege a property interest in his employment. To meet that requirement, Abbott contends that the Town Charter constitutes his employment contract. This is doubtful but, as discussed above, it is premature to determine that Abbott had no property interest whatsoever in his 22-year position with the police

7

force. As he should have the opportunity to establish the nature of that alleged property interest, this claim should not be dismissed at this time.

    6.    <u>Punitive Damages Claim</u>.

Abbott concedes that he may not recover punitive damages against the Town. *See* 14 M.R.S. § 8105(5). He maintains, however, that he has alleged entitlement to punitive damages from the other defendants that would survive a motion to dismiss. To warrant a punitive damages award, a plaintiff must prove "express or implied malice by clear and convincing evidence." *Batchelder v. Realty Resources Hospitality, LLC*, 2007 ME 17, ¶ 13, 914 A.2d 1116, __ (*citing Tuttle v. Raymond*, 494 A.2d 1353, 1361-63 (Me. 1985)). In Abbott's case, the intentional conduct of the officers that forms the basis of his IIED and conspiracy claims could entitle him to punitive damages if he can demonstrate by this heightened standard of proof that the conduct was malicious. This claim should not be dismissed until Abbott has had a chance to undertake discovery on this issue.

The Defendants' Motion to Dismiss raises serious issues concerning the viability of the claims asserted. However, if proven, the Plaintiff's allegations raise serious issues concerning his termination. Prudence dictates that the parties should have the opportunity to develop a more complete record before dispositive pre-trial rulings are made.

## CONCLUSION

Count II, alleging conspiracy as an independent tort claim is Dismissed; otherwise, the Motion to Dismiss is Denied.

Dated:    May 29, 2007

G. Arthur Brennan
Justice, Superior Court

Gene R. Libby, Esq. - PL
Anne Carney, Esq. - DEFS

8

STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-07-03

LYNDON ABBOTT,

Plaintiff

v.

**ORDER**

INHABITANTS OF THE TOWN OF
SANFORD, MAINE, MARK GREEN
and THOMAS JONES,

Defendants

Before the Court is Plaintiff Lyndon Abbott's (Major Abbott) Rule 80B appeal of

the Town of Sanford's December 14, 2006 decision terminating his employment.

Following hearing, the appeal is Denied.

## BACKGROUND AND PROCEDURAL HISTORY

The issue before the Court is whether the Town wrongfully terminated the

employment of Major Abbott. The events giving rise to this case began with an

October 4, 2006 report to the Sanford Police Chief, Thomas Jones (Chief Jones), that

Major Abbot was rumored to be having an affair with a Town official. Major Abbott

was employed by the Sanford Police Department for twenty-two years. He attained

the rank of Major, which included the duties of internal affairs investigator.

After receiving the report of the alleged affair, Chief Jones consulted with the

Town Manager, Mark Green (Town Manager) regarding how to proceed. Generally, a

member of the command staff would have conducted such an internal affairs

investigation; however, the other ranking officer was excluded because of a perceived

bias against Major Abbott. Chief Jones and the Town Manager met with the Town's counsel Bryan Dench (Town Attorney) to determine how to proceed.

On October 10, 2006, the Town Manager and the Chief confronted Major Abbott with the allegations. Major Abbott denied the allegations and was subsequently suspended pending an investigation. The Town then hired the Town Attorney's partner, Attorney Stephen Wade, to conduct the internal investigation. This investigation concluded that Major Abbott was untruthful in his responses to his superiors. The Chief recommended that Major Abbott be terminated.

On November 21, 22 and December 1, 2006 a termination hearing pursuant to 30-A M.R.S.A. §2671 was held, presided over by the Town Manager. At the hearing Major Abbott was represented by counsel and had full opportunity to present and cross-examine witnesses. Major Abbott twice requested at hearing that the Town Manager recuse himself based on allegations of bias. These requests were denied. On December 14, 2006, the Town Manager rendered a decision terminating Major Abbott's employment.

## DISCUSSION

### I. Standard of Review

As an intermediate appellate court, the Superior Court reviews municipal administrative decisions "directly for abuse of discretion, legal error, or findings unsupported by substantial evidence in the record." *Rowe v. City of S. Portland*, 1999 ME 81, ¶ 5, 730 A.3d 673, 675 (*citing Twigg v. Town of Kennebunk*, 662 A.2d 914, 916 (Me. 1995)). "Substantial evidence exists when a reasonable mind would rely on that evidence as sufficient support for a conclusion." *Forbes v. Town of Sw. Harbor*, 2001 ME 9, ¶ 6, 763 A.2d 1183, 1186. The burden of persuasion is on the party challenging a municipal decision to show that the evidence compels a different result. *Twigg*, 662

A.2d at 916. The Court must not substitute its judgment for that of the municipal decision maker on factual issues. *Id.*

Primarily at issue in this case is whether there was substantial evidence in the record to support the Town's decision, and whether the Town abused its discretion by failing to provide a fair and impartial hearing.

## II. Substantial Evidence in the Record

Major Abbott asserts that the findings of the Town were not supported by substantial evidence in the record. Administrative hearings are not subject to "the highly technical rules of evidence." *Frye v. Inhabitants of the Town of Cumberland*, 464 A.2d 195, 200 (Me. 1983) (citations omitted). Accordingly, under Maine's Administrative Procedure law:

> [e]vidence shall be admitted if it is the kind of evidence upon which reasonable persons are accustomed to rely in the conduct of serious affairs. Agencies may exclude irrelevant or unduly repetitious evidence.

5 M.R.S. § 9057 (2007).[1] The court considers the entire record to determine if the hearing officer, "based upon all of the testimony and exhibits before him, . . . could fairly and reasonably find the facts as he did." *Frye*, 464 A.2d at 200. "Substantial evidence exists when a reasonable mind would rely on that evidence as sufficient support for a conclusion; the possibility of drawing two inconsistent conclusions does not render the evidence insubstantial." *Adelman v. Town of Baldwin*, 2000 ME 91, ¶ 12, 750 A.2d 577, 583. The court "will not substitute [its] own judgment for the [town's] judgment." *Id.*

---

[1] The Law Court has further articulated the rule to be:

> When . . . review of the record reveals reliable, probative evidence in support of the agency findings and conclusions, the fact that irrelevant or incompetent evidence was admitted. . . does not amount to reversible error . . . . Only when the agency is shown to have relied upon incompetent evidence to the prejudice of the complaining party can the admission of such evidence require reversal of the agency decision.

*Frye*, 464 A.2d at 200.

In this case the Town determined that Major Abbott had several affairs and lied about those affairs to the investigator. The Town Manager, as fact finder, determined that the testimony of certain witnesses was sufficiently credible and probative to support a finding that Major Abbott's denial of the affairs was not credible. Based on the entire record, the Court finds the evidence substantial enough that a reasonable mind could have relied upon it to reach such a conclusion. This Court cannot substitute its own judgment for that of the hearing officer and because the record does not compel a contrary result, the appeal on these grounds must be denied.

### III. Abuse of Discretion for Failure to Provide a Fair and Impartial Hearing

Major Abbott asserts that he was not afforded a fair and impartial hearing due to the bias of the Town Manager, who presided over the termination hearing. (*See* Pl. Br. 2.)

### a. Standard for Recusal in Municipal Hearings

"[A] proceeding to remove an incumbent from public office is judicial in nature, and [] municipal officials in such removal proceedings must assume the role of a deliberate, unprejudiced tribunal and provide the incumbent with a full and fair hearing." *Frye*, 464 A.2d at 199 (citations omitted). In order to provide an individual with a full and fair hearing, the hearing officer must not prejudge the case. *Id.* (*citing Seviginy v. City of Biddeford*, 344 A.2d 34, 40 (Me. 1975)). "[H]e should suspend his own judgment till the hearing is completed, that it may be the result of the hearing, and not of a pre-conceived opinion." *Id.* However, "prior involvement in some aspects of a case will not necessarily bar a[n] . . . official from acting as a decision maker." *Id.* (*quoting Goldberg v. Kelly*, 397 U.S. 254, 271 (1970)).[2]

---

[2] The *Goldberg* Court stated:

Moreover, "a hearing officer enjoys a presumption of honesty and integrity."

*Mrs. V. v. York Sch. Dist.*, 434 F.Supp 2d 5, 12-13 (D. Me. 2006). Thus the burden is on

the party alleging bias to "produce evidence sufficient to rebut this presumption . . . "

that is "more than mere speculation and tenuous inferences." *Gomes v. Univ. of Maine*

*System*, 365 F.Supp. 2d 6, 31 (D. Me. 2005) (internal citations and quotations omitted).

When a claim is made that a hearing officer performed both investigatory and

adjudicatory functions, that combination of functions alone is not a *per se* violation of

due process rights. *Withrow v. Larkin*, 421 U.S. 35, 58 (1975). That being said, such a

claim does not

> preclude a court from determining from the special facts and circumstances
> present in the case before it that the risk of unfairness is intolerably high.
> Findings of that kind made by judges with special insights into local realties are
> entitled to respect. . . .

*Id.* However, parties advancing such arguments "have a very difficult burden of

persuasion to carry." *Pathak v. Dept. of Veterans Affairs*, 274 F.3d 28, 33 (1st Cir. 2001)

(*citing Withrow*, 421 U.S. at 47).

Here, the burden was on Major Abbott to put forth evidence sufficient to rebut

the presumption that the Town Manager acted fairly and impartially. The Court is

limited to a review of the record. *See Lane Constr. Corp. v. Town of Washington*, 2008 ME

45, ¶ 29, __ A.2d __ (*citing Baker's Table, Inc. v. City of Portland*, 2000 ME 7, ¶ 9, 743 A.2d

237, 240-41).

While this case was under advisement in this Court, the Law Court decided a

case clarifying the line for mandatory recusal by a town officer. *See id.* ¶ 30. The *Lane*

---

[W]e are unable to say that the possible involvement of that official in aspects of a case prior to the review of proposed termination necessarily disqualifies him for conducing a fair hearing. Some degree of previous familiarity and informal contact with a case by a hearing officer is a common phenomenon in many administrative agencies. That the review officer is familiar with, or even has formulated opinions about, the facts of a case prior to review is not in itself sufficient to disqualify him.

Court held that, although the planning board chairman in that case "personally supported" plaintiff's application before the board, "the evidence provided by [the party in interest] fell short of proving that his conduct at the meetings was biased or that he participated in them from a standpoint of predisposition." *Id.* Evidence found insufficient to prevail on the issue of bias was 1) a letter from the chairman to the local newspaper prior to hearing "expressing distain for the land use ethic of people 'from away'" [presumably the parties in interest]; 2) an alleged statement of the chairman to a former chairman supporting the Lane project; 3) an alleged statement by the chairman "at a local store talking about the project and apparently trying to engage others in the conversation." The Lane Court considered this evidence in light of the extensive due process afforded the parties in interest.

*Lane* provides guidance with respect to the case *sub judice*: Major Abbott was provided with three full days of hearing, on the record, wherein he was permitted to call and cross-examine witnesses. He claims three specific instances as substantial evidence of bias in this matter: 1) a statement by the Town Manager to Chief Jones that he supported the recommendation for removal; 2) personal e-mails of Major Abbott proffered by the Town Manager's attorney to Major Abbott's attorney on the eve of hearing, and 3) an affidavit of the Town Finance Director, Mr. Walsh (Walsh Affidavit), alleging a "plan" to pay for the internal investigation using the remainder of Major Abbott's salary after his termination.

The evidence produced on these points does sustain individually or collectively Major Abbott's "very difficult burden" of proof. The statement of Chief Jones, at hearing, that he was under the impression that Town Manager Green was in accord with his decision to recommend removal represents the kind of expression of personal support for a position found insufficient to show bias by the *Lane* Court. *Id.*

With respect to the e-mails, while the Town concedes that they were produced through the Town Manager, this is insufficient to show bias *per se*. Major Abbott retains the burden of showing that that the Town Manager's action exceeded the dual investigatory and adjudicatory function inherent in his office. *See Pathak*, 274 F. 3d at 33. Particularly so when the Town Manager explicitly states he has not "read them thoroughly" and will not consider them. Tr. 14.

The most cogent evidence produced to show that there may be "special facts and circumstances present. . . that risk unfairness. . . ." was an affidavit containing hearsay from an unidentified declarant.

Citing to the hearsay nature of the evidence and, through counsel, denying the existence of any "plan" to use the balance of Major Abbott's salary upon termination to pay for the internal investigation, the Town Manager declined to recuse himself. While this presents a close and frankly quite troubling question, the quality of the evidence on this point is insufficient to sustain Major Abbott's substantial burden to overcome the strong presumption that the Town Manager acted impartially.

The entry will be as follows:

Plaintiff's Rule 80B appeal is Denied; the Town's Administrative decision is Affirmed.

Dated:     April 1, 2008

G. Arthur Brennan
Justice, Superior Court

PLAINTIFF:
GENE R. LIBBY, ESQ.
LIBBY O'BRIEN KINGSLEY
62 PORTLAND RD, SUITE 17
KENNEBUNK ME   04043

DEFENDANT:
ANNE CARNEY ESQ
NORMAN HANSON & DETROY
PO BOX 4600
PORTLAND ME   04112-4600

7