STATE OF MAINE                           SUPERIOR COURT
CUMBERLAND, ss.                          DOCKET NO AP-09-25
                                         JAW -CUM- 2/16/2010


BRIAN BAILEY,

        Petitioner

v.

INHABITANTS OF THE
TOWN OF YARMOUTH, MAINE,

        Respondent.


## ORDER


Before the Court is Petitioner Brian Bailey's ("Bailey") Rule 80B appeal of the

Town of Yarmouth's ("Town") March 2, 2009 decision terminating his employment.

Following hearing, the appeal is DENIED.



## BACKGROUND AND PROCEDURAL HISTORY

The issue before the court is whether the Town wrongfully terminated Bailey's

employment. The Town hired Bailey as a Waste Water Treatment/Collection Systems

Operator on November 14, 2006, employment beginning on November 20, 2006. The

terms and conditions of Bailey's employment were governed by a collective bargaining

agreement with the Yarmouth Waste Water Division Employees Association.

Bailey's personnel file, part of the administrative record utilized by the Town,

contains documentation of various incidents of Bailey's poor job performance:

- A warning letter dated January 7, 2008, from Dan Jellis, the Town Engineer, to

     Bailey that relieved Bailey from snow plow duties after Foreman David Cline

1

reported that Bailey exhibited loud, angry, and irrational behavior when reporting for duty on December 29, 2007;

- A letter dated June 30, 2008, from Jellis to Bailey documenting two occasions which Bailey did not report to work or inform his supervisor when he would return to work;

- A letter dated December 1, 2008, from Lead Operator Chris Cline to Bailey's Supervisor, Tom Connolly, that states that Bailey did not check the pump room as assigned, did not refuel or test run the portable or plant generator as assigned, and left early without permission. When questioned about these assignments Bailey responded that he forgot;

- Critical Incident/Event Log: Connolly documented Bailey's performance between January 20, 2009-January 30, 2009. The documentation indicated that:
  - Bailey failed to tell a lead operator about his medical restriction for lifting;
  - Bailey did not follow through with the cleaning, greasing, refueling, or charging of a loader and compost mixer resulting in a dead battery and 5 yards of frozen compost in the mixer;
  - Bailey lied about checking pump stations and associated alarms, indicating that he had checked them, even though the computer system that records alarm tests indicated they had not been tested;
  - Bailey was assigned to check pump stations and stated that the wet well floats did not need to be cleaned even though they had been checked by the Supervisor the day before who indicated that they were in dire need of cleaning;

2

o Bailey asked to leave work early because of back pain, but was later

observed plowing driveways in his personal vehicle;

o Bailey called in sick claiming that he fell on the ice at home and broke his

foot, but upon return he brought in a worker's compensation form from his

doctor stating that his foot was injured at work, and when asked why he

did not correct the form prior to leaving the office he feigned ignorance.

On March 2, 2009, by letter from Dan Jellis to Bailey, Bailey's employment was terminated. The reasons listed in the termination letter included: a pattern of inattention to duties; not providing medical documentation of a return to work date; and for fabricating facts to supervisors about work accomplished. On that same day, Bailey went to Town Manager Tupper's office to protest the termination and refute the claim that he lied about checking the pump station in January. Tupper advised Bailey that he needed to use the formal grievance process and directed him to check with the union about representation.

Subsequently Bailey filed an oral grievance with Connolly, which was denied on March 10, 2009. On March 12, 2009, Bailey, through his attorney, sent a grievance appeal letter to Town Manager Nathaniel Tupper. Tupper forwarded the letter to Town Engineer Jellis in accordance with Step B of the Wastewater Division Union Contract grievance process.[1]

---

[1] The Wastewater Grievance procedure states:
Grievances, which for the purposes of this Agreement shall be defined as disputes with respect to the interpretation of application of the specific terms of this Agreement, shall be processed in the following manner:
  A. An employee who believes he has a grievance shall first present the grievance, in an informal manner, within seven (7) days of its occurrence, to the division supervisor. A reasonable effort shall be made to resolve the grievance, informally, with seven (7) working days.

On March 20, 2009, Jellis forwarded Bailey his entire personnel file and responded to his grievance letter. Jellis reiterated the reasons for discharge as: "1) Lying to his supervisor about work accomplished, 2) A pattern of inattention to his duties: and 3) An apparent lack of attention to and a disregard of requests to keep Tom informed of when Brian would be able to return to work."

On April 3, 2009, Jellis and Connolly met with Bailey and his attorney to discuss the termination. On April 7, 2009 Bailey, through his attorney, submitted a proposed settlement to the Town with an offer to complete a substance abuse and anger management evaluation, counseling, dropping the requests for back pay, and 20 hours of community service in exchange for keeping his job. By letter dated April 10, 2009, Jellis informed Bailey that he would not reverse his decision to terminate his employment, and that Bailey had the right to appeal his decision to the town manager.

On May 12, 2009, Town Manger Tupper met with Bailey, his attorney, and Jellis for Step 3 of the grievance process. At the meeting Bailey objected to Tupper's questions regarding whether Bailey's current description of the events of January 27 were consistent with his March 2 statements to Tupper. Bailey objected that any consideration of these conversations by Tupper would be unfair because when Bailey spoke to Tupper

---

B. If the employee is not satisfied with the decision rendered above, the union shall reduce the grievance to writing and submit it to the Town Engineer within five (5) days of the decision above. The written grievance shall contain: (a) a concise statement of the events allegedly giving rise to the grievance, (b) the specific section of this Agreement alleged to be violated, (c) all evidence available in support of the claimed grievance and (d) a statement as to when the grievance arose, became known or should have become know to the employee. A written determination with respect to the grievance shall be made by the Town Engineer within five (5) working days.

C. If the decision of the Town Engineer is not satisfactory to the employee, the union may appeal the grievance to the Town Manager, in writing, within three (3) days. The Town Manager shall render his decision in writing to the employee and the union within seven (7) working days of the date the grievance is received. In matters pertaining to discipline and discharge, the findings of the Town Manager shall be final and binding, pursuant to Town Charter there shall be no appeal therefrom.

on March 2 his termination was not yet under review, and further, that Tupper should be disqualified as an unbiased reviewer since he was an actual witness to the events. These requests were denied. On June 2, 2009, Tupper rendered a decision upholding the termination of Bailey's employment. Tupper also addressed Bailey's bias concerns as unfounded since his inquiry was merely to gauge the consistency of Bailey's portrayals of the January 27 incident, and further, that there were no substantial differences in the way Bailey recounted his conversation of January 27 between March 2 and May 12, and as such the impact of the conversations did not lead to any unfair preconceptions or biases.

On June 29, 2009, Bailey filed an 80B complaint and two independent claims for a Freedom of Access Act violation, and a Due Process Violation. Bailey's 80B brief does not include a position on the Freedom of Access Act, and as such the court deems the issue as waived.

## DISCUSSION

### I. Standard of Review

As an intermediate appellate court, the Superior Court reviews municipal administrative decisions "directly for abuse of discretion, legal error, or findings unsupported by substantial evidence in the record." *Rowe v. City of S. Portland*, 1999 ME 81, ¶ 5, 730 A.3d 673, 675 (citing *Twigg v. Town of Kennebunk*, 662 A.2d 914, 916 (Me. 1995)). "Substantial evidence exists when a reasonable mind would rely on that evidence as sufficient support for a conclusion." *Forbes v. Town of Sw. Harbor*, 2001 ME 9, ¶ 6, 763 A.2d 1183, 1186. The burden of persuasion is on the party challenging a municipal decision to show that the evidence compels a different result. *Twigg*, 662 A.2d

at 916. The Court must not substitute its judgment for that of the municipal decision maker on factual issues. *Id.*

Primarily at issue in this case is whether there was substantial evidence in the record to support the Town's decision, and whether the Town abused its discretion by failing to provide a fair and impartial hearing.

## II.    Substantial Evidence in the Record

Bailey asserts that the findings of the Town were not supported by substantial evidence in the record. Administrative hearings are not subject to "the highly technical rules of evidence." *Frye v. Inhabitants of the Town of Cumberland*, 464 A.2d 195, 200 (Me. 1983) (citations omitted). "Substantial evidence exists when a reasonable mind would rely on that evidence as sufficient support for a conclusion; the possibility of drawing two inconsistent conclusions does not render the evidence insubstantial." *Adelman v. Town of Baldwin*, 2000 ME 91, ¶ 12, 750 A.2d 577, 583. The court considers the entire record to determine if the hearing officer, "based upon all of the testimony and exhibits before him, . . . could fairly and reasonably find the facts as he did." *Frye*, 464 A.2d at 200.

In this case the Town Manager ultimately decided that Bailey's termination was warranted due to his fabricating certain facts and pattern of inattention to work. The Town Manager, as fact finder, determined that the supporting documents and testimony of certain witnesses were sufficiently credible and probative to support a finding of inattention to work detail and that Bailey's denials of the allegations were not credible. Based on the entire record, the Court finds the evidence substantial enough that a reasonable mind could have reached such a conclusion. This Court cannot substitute its

6

own judgment for that of the hearing officer and because the record does not compel a contrary result, the appeal on these grounds must be denied.

III.    Due Process Violations

Bailey also alleges that his due process rights were violated throughout the termination proceedings. To the extent that Bailey argues that his termination was governed by the Town of Yarmouth Employee Handbook and not the Wastewater Division Collective Bargaining Agreement, the court disagrees. The Statement of Disclaimer and Collective Bargaining Unit Statement in the handbook both indicate that the handbook is for informational purposes only, and that Wastewater Division employees are governed by the terms and conditions of the collective bargaining agreement.

Bailey also asserts that he was not afforded a fair and impartial hearing due to the bias of Town Manager Tupper who presided over the Step C grievance hearing.

In order to provide an individual with a full and fair hearing, the hearing officer must not prejudge the case. *Frye*, 464 A.2d at 199 (citing *Seviginy v. City of Biddeford*, 344 A.2d 34, 40 (Me. 1975)). "[H]e should suspend his own judgment till the hearing is completed, that it may be the result of the hearing, and not of a pre-conceived opinion." *Id.* However, "prior involvement in some aspects of a case will not necessarily bar a[n] . . . official from acting as a decision maker." *Id.* (quoting *Goldberg v. Kelly*, 397 U.S. 254, 271, 90 S. Ct. 1011, 1022, 25 L. Ed. 2d 287, 301 (1970) (noting that a degree of "familiarity and informal contact with a case by a hearing officer is a common phenomenon in many administrative agencies. That the review officer is familiar with, or

7

even has formulated opinions about the facts of a case prior to review is not in itself sufficient to disqualify him.")).

The court finds no evidence in the administrative record suggesting that Tupper's role in Bailey's termination tainted the result such that Bailey's due process rights were violated.[2] *See Lane Constr. Corp. v. Town of Washington*, 2008 ME 45, ¶ 29, 942 A.2d 1202, 1210-11. Although Bailey went to the Town Manager Tupper's office immediately after receiving his termination and told Tupper that he never lied about the events that occurred on January 27, this did not necessarily render him biased. Tupper's Grievance Appeal Decision demonstrates that he thoroughly examined all aspects of Bailey's claim, reviewed all relevant evidence, and came to a decision based on the evidence before him. On the record, his actions cannot be said to be a result of bias.[3]

## CONCLUSION

The entry will be as follows:

Petitioner's Rule 80B appeal is DENIED; the Town's Administrative decision is AFFIRMED. The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

---

[2] The court notes that Bailey's motion for trial on the facts was denied by this court on September 23, 2009, therefore the court only considers at the administrative record in making its decision. *See Lane*, ¶ 29, 942 A.2d at 1210-11.

[3] Bailey relies on *Moore v. State of Maine Board of Dental Examiners*, KEN-AP-07-65 (Decision and Order, April 15, 2008). However, the fact that Bailey went to the Town Manager's office immediately after receiving his termination and told him that he had not lied to Connolly does not make the Town Manager a witness. Moreover, the facts in *Moore* are inapposite to the facts here. In *Moore*, the Board's determination was that the petitioner did not meet the minimum accepted standards of practice. The patient, NF, sought a second opinion from an oral surgeon who was also a member of the Board, who encourage the patient to file a complaint with the Board, and who testified as an expert witness before the Board. In vacating the Board's decision, the court reasoned that "his role as a sitting board member combined with his pre-complaint treatment of NF, his role in advising NF to file a complaint, his expressed opinions of the efficacy of the complaint as seen by the Board on which he sat, combine to create an intolerable risk of bias or unfairness." *Id.* None of those factors exist in the case at hand.

DATED: 2/26/10

_____
Joyce A. Wheeler, Justice

9

SCOTT LYNCH ESQ
HORNBLOWER LYNCH RABASCO & VAN DYKE
PO BOX 116
LEWISTON ME 04243-0116

MARK FRANCO ESQ
VICTORIA MORALES ESQ
THOMPSON & BOWIE
PO BOX 4630
PORTLAND ME 04112-4630